

1996 Decisions

7-18-1996

# Homar v. Gilbert

Precedential or Non-Precedential:

Docket 95-7218

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Homar v. Gilbert" (1996). *1996 Decisions.* Paper 104.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/104

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-7218


RICHARD J. HOMAR,
                    Appellant

                  v.

    JAMES E. GILBERT, Individually, and in his
 capacity as Pres. of E.S. Univ.;  GERALD LEVANOWITZ,
     Individually, and in his capacity as director
of Human Res. at E.S. Univ.;  DAVID MARAZAS, Individually,
   and in his capacity as Police Chief of E.S. Univ;
   CURTIS ENGLISH, Individually, and in his capacity
                 as V.P. of E.S. Univ.



      Appeal from the United States District Court
       for the Middle District of Pennsylvania
             (D.C. Civil No. 93-cv-0852)



      Submitted Under Third Circuit LAR 34.1(a)
           Thursday, November 2, 1995



  Before:  NYGAARD, ALITO, and SAROKIN, Circuit Judges

             (Filed July 18, 1995)


                        James V. Fareri
                        Mervine, Brown, Newman,
                          Williams & Mishkin,
                        712 Monroe Street
                        P.O. Box 511
                        Stroudsburg, PA  18360

                        Attorney for Appellant


                        Gwendolyn T. Mosley
                        Office of Attorney General

15th Floor, Strawberry Square
Harrisburg, PA  17120

Attorneys for Appellees


OPINION OF THE COURT


SAROKIN, Circuit Judge.

Plaintiff Richard Homar was suspended without pay from his position as a police officer at East Stroudsburg University after his arrest on drug-related charges.  The criminal charges against Homar were eventually dismissed, but Homar was nonetheless subsequently demoted to the position of groundskeeper.  Homar filed suit in federal district court seeking reinstatement, backpay and damages for violations of his due process rights.  The district court entered summary judgment in favor of defendants.  Plaintiff appeals.

Although we conclude that these circumstances warranted and justified an immediate suspension of employment without a hearing, the added suspension of pay necessitated a hearing.  Furthermore, the subsequent restoration of that pay cannot serve to cure the due process violation.  It may serve to reduce the damages to which the employee may be entitled, but the deprivation must be viewed at the time of its occurrence, not as belatedly corrected by later action; otherwise employers could violate the due process rights of their employees and simply cure those violations through the means of retroactive pay.

We also hold that once suspended, an employee is entitled to a hearing before any further action is taken to demote, terminate, or extend his suspension.  At such a hearing, the employee is entitled to know the evidence against him and be afforded the opportunity for a meaningful response.  We conclude that there is a genuine issue of material fact as to whether such a hearing was afforded here, and we thus reverse the order of summary judgment.

I.

Plaintiff Richard Homar was employed as a police officer at East Stroudsburg University ("ESU").  On August 26, 1992, Homar was arrested when a drug raid took place at the home of his friend, James Crompton, whom he was visiting.  That same day, the Pennsylvania State Police filed a criminal complaint against Homar charging him with possession of marijuana, possession with intent to deliver and criminal conspiracy.

The state police called David Marazas, ESU's police chief and Homar's supervisor, to inform him of Homar's arrest and the charges against him.  Marazas then informed Gerald Levanowitz, ESU's Director of Human Resources, to whom ESU President James Gilbert

had delegated authority to discipline and suspend ESU employees. Levanowitz decided immediately to suspend Homar without pay. No pre-suspension hearing was held.

On August 27, Homar received a letter from Levanowitz advising him that he was suspended without pay pending further investigation and disposition of the criminal charges. The letter advised Homar that any administrative action taken by the University against him "[did] not have to coincide with the disposition of those charges through the legal process." Appendix ("App.") at 197.

District Justice Charles P. Eyer dismissed all criminal charges against Homar on September 1, 1992. Levanowitz still refused to lift Homar's suspension.

On September 11, 1992, Levanowitz, along with two ESU police sergeants who were assigned to conduct an investigation on Homar, met with two state troopers and a Corporal to discuss Homar's situation. App. at 143. One of the troopers was the state trooper who signed the criminal complaint against Homar. At this meeting, Levanowitz was provided with a copy of a page from the Pennsylvania State Police investigative file regarding Homar, called the "Supplemental Report." This report includes statements attributed to Homar that he allegedly made to the Pennsylvania State Police when he was interviewed shortly after his arrest. According to the Supplemental Report, Homar admitted his knowledge of drug dealing by Crompton and another man named Habhab, and Homar further admitted that he had received marijuana from Habhab for his own use while he was employed as an ESU police officer. Homar contests that he ever made these statements.

On September 15, 1992, Levanowitz called Homar and arranged for a meeting three days later. Levanowitz explained that this meeting would be an "administrative hearing," and that accordingly Homar had a right to have his union representative present but that he did not have a right to legal counsel.

Homar attended this meeting on September 18, 1992, along with his union representative. Besides Levanowitz, Marazas was also present, as well as Levanowitz's secretary. At the start of the meeting, Homar's union representative requested that Homar's attorney be present. Levanowitz responded that if Homar so chose, they would have to postpone the meeting until a later time. Homar opted to proceed with the meeting unrepresented. According to the notes taken by Levanowitz's secretary, Levanowitz made the following statement to Homar:

> The purpose of this meeting today is to give you an opportunity to provide any information on your own behalf that would assist us in making a determination concerning the action that would end your suspension and any information that would be of help to you in presenting your case.

App. at 205.

Levanowitz maintained at a deposition held later that he had told Homar that "the State Police had given [him] some evidence very serious in nature," App. at 164, and that he offered Homar the opportunity to present his side of the story. Levanowitz never informed Homar that he had received the Supplemental Report from the state police containing his alleged confession.

On September 23, 1992, Levanowitz wrote a letter to Homar advising him that he was being demoted from the position of police officer to the position of groundskeeper. The text of the letter reads, in pertinent part, as follows:

> This is to inform you that you are to be demoted from your position as a Police Officer I in the Campus Police Department to the position of Groundskeeper. . . . The action is effective retroactive to August 26, 1992, and you are to be given back pay to that date at the rate of pay for a Groundskeeper. You are to report to work at 7:00 A.M. on September 24, 1992 at the Facilities Management Office. Your new rate of pay as Groundskeeper will be $552.80 bi-weekly.
>
> This action is being taken as a result of admissions made by yourself to the Pennsylvania State Police on August 26, 1992 that you maintained association with individuals whom you knew were dealing in large quantities of marijuana and you obtained marijuana from one of those individuals for your own use. Your actions constitute a clear and flagrant violation of Sections 200 and 200.2 of the East Stroudsburg University Police Department Manual.

App. at 208 (footnote added).

After this letter was issued, the president of the union representing Homar requested that Homar have an opportunity to meet with President Gilbert regarding the letter. The meeting occurred on September 24, 1992 at 2:00 p.m. By this time, Homar had received and read a copy of the Supplemental Report. Gilbert provided Homar with an opportunity to respond to the charges and to Levanowitz's decision. Gilbert nonetheless sustained the suspension.

After failing to obtain relief through his union grievance procedure, Homar filed a complaint in the district court for the Middle District of Pennsylvania against Gilbert, Levanowitz and Marazas. His complaint alleges that the procedures by which he was suspended and then demoted lacked required due process, that defendants' actions deprived him of liberty and property, and that his substantive due process rights were also violated. The district court entered summary judgment in favor of the defendants on March 17, 1995. Homar then appealed to this court.

## II.

The district court had jurisdiction over this action pursuant to 28 U.S.C. 1331 and 1343 and 42 U.S.C. 1983. This court has jurisdiction over the appeal of the district court's final decision under 28 U.S.C. 1291.

Our review of the district court's order for summary judgment is plenary, and we thus apply the same standards that were applicable in the district court. J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1530 (3d Cir., 1990), cert. denied, 499 U.S. 921 (1991). Summary judgment is appropriately granted when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c).  If, however, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), summary judgment shall not be granted.  Homar, as the nonmoving party, is entitled to have all reasonable inferences drawn in his favor.  SeeJ.F. Feeser, 909 F.2d at 1531.

                                III.

    Homar's first claim is that ESU failed to provide him a meaningful pre-deprivation hearing prior to his suspension without pay and his subsequent demotion from police officer to groundskeeper.

    In Cleveland Bd. of Education v. Loudermill, 470 U.S. 532 (1985), the United States Supreme Court held that when a public employee has a property interest in his or her employment he or she is entitled to a meaningful pre-termination hearing.  Such a hearing need not be elaborate, but rather "an initial check against mistaken decision -- essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  Id. at 545-46. Loudermill specifically requires that prior to termination:

        [a] tenured public employee is entitled to oral or
        written notice of the charges against him, an explanation
        of the employer's evidence, and an opportunity to present
        his side of the story.
Id. at 546.

    The Supreme Court has made it eminently clear that due process entitles a party to such a hearing "before he [or she] is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."  Boddie v. Connecticut, 401 U.S. 371, 379 (1971); see also Loudermill, 470 U.S. at 542;  Bell v. Burson, 402 U.S. 535, 542 (1971).  This fundamental right to a pre-deprivation hearing is not abridged by the availability of extensive post-deprivations remedies.  SeeMorton v. Beyer, 822 F.2d 364, 368 (3d Cir. 1987) (holding that "the availability of extensive post-termination procedures does not eliminate the essential requirement of due process that a hearing be provided before discharge"); Gniotek v. City of Philadelphia, 808 F.2d 241, 243 (3d Cir. 1986) (noting that "[t]he predeprivation hearing need not be elaborate, but it is necessary, even if extensive post-deprivation remedies are afforded."), cert. denied, 481 U.S. 1050 (1987).

    While we recognize that Homar was not completely terminated from his employment with ESU, he was terminated from his position as a police officer and received a reduction in his pay. Accordingly, we find the requirements of Loudermill to be applicable in this instance.  Indeed, there is no dispute among the parties that Homar had a property interest in his employment as police officer.  Rather, the dispute concerns the degree of due process to which Homar was entitled prior to his suspension without pay and prior to his demotion from his position as police officer to groundskeeper.

                                A.

We will first address Homar's contention that he was entitled to notice and an opportunity to be heard prior to his suspension without pay from his position as an ESU police officer.

It is undisputed that Homar was not afforded any kind of hearing prior to his suspension without pay immediately following his arrest on drug charges. ESU nonetheless argues that Homar's due process rights were not violated because, while Homar's interest in remaining in his job is "an important one," ESU had a compelling interest in "taking prompt action to maintain public confidence in its police force." Appellee's Brief at 15. Indeed, the Supreme Court has explained that

> [a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation.

FDIC v. Mallen, 486 U.S. 230, 240 (1988); see also Boddie, 401 U.S. at 379 (noting that there can be "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event").

The district court agreed with ESU, finding that it was permissible for the university to suspend Homar without pay and without a hearing. The court first noted that "[b]oth the timing and the nature of requisite process depends upon an 'appropriate accommodation of the competing interests involved.'" Homar v. Gilbert, No. CV-93-0853, typescript at 11 (M.D. Pa., March 17, 1995) (hereinafter "D. Ct. Op.") (citing Goss v. Lopez, 419 U.S. 565, 579 (1975)). It then applied the analysis prescribed by Logan v. Zimmerman Brush Co., assessing the competing interests involved, including "the importance of the private interest, and the length and finality of the deprivation, . . . the likelihood of governmental error, . . . and the magnitude of the governmental interests involved." Id., typescript at 11 (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 434 (1982)). While the district court recognized that Homar's "private interest was strong," it found that "the deprivation incident to a suspension was only temporary and of a relatively brief duration (approximately one month)." Id., typescript at 11. The district court concluded that Homar's interest in avoiding such a "temporary" and "brief" deprivation was not as compelling as "the governmental interest in preserving public confidence in law enforcement." Id., typescript at 12. The court found its conclusion bolstered by the fact that Homar was eventually awarded full pay and benefits for the period of suspension, noting that "'[s]uspension with pay does not raise due process concerns.'" Id., typescript at 13 (quoting Hicks v. City of Watonga, Okl., 942 F.2d 737, 746 n.4 (10th Cir. 1991).

We agree with the district court that there was a compelling governmental interest which supports ESU's decision to suspend Homar immediately and without a hearing pending further investigation. The university has a substantial interest in maintaining public confidence in the ESU police force, and Homar's arrest on drug charges certainly suffices to ensure that the university's concerns were not baseless or unwarranted, as required by the Supreme Court. See Mallen, 486 U.S. at 240. In

circumstances where public safety is implicated, "[n]ot even an informal hearing . . . must precede a deprivation." Caine v. Hardy, 943 F.2d 1406, 1412 (5th Cir. 1991) (en banc), cert. denied, 503 U.S. 936 (1992).

Nonetheless, we find that Homar's due process rights were violated because he was suspended without pay. The Supreme Court's decision in Loudermill strongly suggests that suspension without pay must be preceded by notice and an opportunity to be heard in all instances. Initially, the Court noted that it had "frequently recognized the severity of depriving a person of the means of livelihood." Loudermill, 470 U.S. at 543. Then the Court explained that, while it recognized that there were some limited instances in which a strong governmental interest might warrant immediately removing a person from a position without a hearing, "in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." Id. at 544-45 (emphasis added).

Other circuits which have examined this language in Loudermillhave disagreed with regard to its precise mandate. At least one court of appeals has read Loudermill to require that an employee be provided an opportunity to be heard prior to suspension without pay. See Everett v. Napper, 833 F.2d 1507, 1512 (11th Cir. 1987) (holding that, under Loudermill a suspended firefighter was entitled to a hearing prior to suspension because he was not paid during his suspension). The Federal Circuit, by contrast, noted that Loudermill's prescription of suspension with pay in situations where significant hazards would result from continued employment was only dicta: "We agree that in the instant case, the government could have suspended with pay. Nevertheless, we cannot read Loudermill as holding the government must suspend . . . with pay." Engdahl v. Dept. of Navy, 900 F.2d 1572, 1578 (Fed. Cir. 1990). Other circuits, while not explicitly addressing Loudermill, have on occasion allowed suspension without pay to stand even in the absence of a pre-deprivation hearing. See, e.g., Jones v. City of Gary, Ind., 57 F.3d 1435, 1436 (7th Cir. 1995); Ambus v. Granite Bd. of Educ., 975 F.2d 1555, 1558, 1562 (10th Cir. 1992), modified on rehearing by, 995 F.2d 992 (10th Cir. 1993) (en banc).

This court has not precisely addressed this issue in the past. However, our decision in Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064 (3d Cir. 1990), may be read to imply that, under Loudermill, suspension without a pre-deprivation hearing is only constitutional if the suspension is one with pay. In Bradley, we were called upon to decide, among other issues, whether a teacher who had been effectively suspended without pay and without a hearing for one year prior to being officially terminated, had been deprived of his procedural due process rights. The employer in Bradley ultimately provided Bradley full sabbatical pay for the year in question. The district court had relied upon Loudermill to conclude that the employer was entitled to suspend Bradley without a pre-suspension hearing because he eventually had been provided payment for the period of suspension. Id. at 1077. In reviewing this decision, we first acknowledged that under Loudermill, in circumstances where a governmental employer perceives substantial hazards in keeping an employee on the job, it may suspend the

employee with pay until such time that a hearing may be held.  Id.(citing Loudermill, 470 U.S. at 544-45).  We concluded, however, that "Loudermill [did] not govern [that] case because Bradley was suspended without pay." Id. We thus implicitly, but necessarily, rejected the idea that a government employer could cite to the substantial hazards of keeping an employee on the job and thereby suspend him without a pre-suspension hearing without pay.  Had we determined that Bradley had been suspended with pay, we presumably would have found that the Loudermill exception -- essentially the Mallen exception -- applied.  Thus, while Bradley does not explicitly declare that suspension without pay and without a pre-suspension hearing always violates due process, such a holding may be inferred from its reasoning.

Today we clearly enunciate that a governmental employer may not suspend an employee without pay unless that suspension is preceded by some kind of pre-suspension hearing, providing the employee with notice and an opportunity to be heard.  We think that such a holding is not only consistent with, and suggested by, Loudermill, but it is also eminently sensible.  It is imperative that employers be provided with adequate flexibility to allow them to protect the public and respond to emergency situations expediently.  Suspension with pay addresses these important concerns while simultaneously protecting the fundamental rights of an employee to due process prior to being deprived of his or her property interest in employment and its accompanying salary.  Furthermore, this conclusion seems consistent with the Supreme Court's holding in Zimmerman Brush that, in determining the timing and nature of an appropriate hearing, courts should assess the competing interests involved and arrive at an appropriate accommodation.  Zimmerman Brush, 455 U.S. at 434.

As noted above, the district court treated Homar's suspension as a suspension with pay:

> That Homar was originally suspended without pay does not warrant a finding that he was deprived of property without due process.  At most, he was denied use of his salary for a very brief period of time.  To recognize a cause of action for denial of due process under these circumstances would clearly elevate form over substance.

*     *     *

> Since he clearly could be suspended with pay without implicating due process concerns, and within one month after being suspended he was awarded full pay for the period of suspension, any injury resulting from the failure to provide an opportunity to be heard before the suspension was imposed is surely de minimis.

D. Ct. Op., typescript at 13-14.

We fundamentally disagree with the district court's conclusion.  First, our decision in Bradley clearly indicates that the subsequent awarding of backpay does not remedy a due process violation:

> The right to procedural due process cannot be so ephemeral that it evaporates because an individual

suspended without pay happened to obtain paid leave thereafter. . . . That may affect the damages ultimately awarded, but if there was a violation of due process, [the employee] is entitled to have that right vindicated.

Bradley, 913 F.2d at 1077.

Second, Homar's suspension without pay cannot be viewed as deminimis. At the time that Homar was suspended, he was told that he was "to be suspended without pay, effective immediately on 8/26/92, from [his] position as a police officer at East Stroudsburg University." App. at 197. For a period of approximately one month, Homar's very livelihood was threatened because he received no salary. As far as Homar knew at the time of his suspension, he had no prospects whatsoever of receiving any wages for the indefinite duration of his suspension. It was not until he received his letter of demotion on September 24, 1992 -- nearly a month after he was suspended -- that he learned he would be receiving backpay at the rate of a groundskeeper. While it is true that Homar eventually received backpay at the wage rate he earned as a police officer to cover the period of his suspension, we note that according to Defendant's Statement of Material Fact accompanying their Motion for Summary Judgment, Levanowitz did not authorize Homar's backpay at the rate of a police officer until February 16, 1993. Thus, for nearly six months, Homar was deprived of a salary that was rightfully his. Furthermore, there is evidence to suggest that ESU only agreed to pay this rate upon pressure from Homar's union representative.

Accordingly, we find that Homar was entitled to notice and at least some kind of hearing prior to being suspended without pay. It is undisputed that Homar received no hearing prior to his suspension, and we conclude that the district court erred in granting summary judgment in favor of defendants on this issue.

B.

Homar further alleges that he was deprived of meaningful pre-termination due process in the course of his demotion to the position of groundskeeper.

As outlined above, Loudermill requires that a public employee with a property interest in his or her employment be granted a meaningful pre-termination hearing. Loudermill, 470 U.S. at 545-46. We reiterate that it is of paramount importance that this hearing take place prior to the deprivation. As explained above, absent compelling government interests justifying postponement of a hearing, the hearing must take place before the deprivation, seeBoddie, 401 U.S. at 379; Loudermill, 470 U.S. at 542; Bell, 402 U.S. at 542, because "the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." Id.; see also, Board of Regents v. Roth, 408 U.S. 564, 570 n.7 (1972). Indeed, this right to pre-deprivation due process is so fundamental that it remains "even if extensive post-deprivation remedies are afforded." Gniotek, 808 F.2d at 243; see also Morton, 822 F.2d at 368.

This pre-deprivation hearing need not be elaborate. As explained by the Supreme Court, "'something less' than a full evidentiary hearing is sufficient prior to adverse administrative

action." Loudermill, 470 U.S. at 545 (citations omitted). Nonetheless, the hearing must be sufficient to inform the employee of the evidence against him or her and to respond to the evidence. See Fraternal Order of Police Lodge No. 5 v. Tucker, 868 F.2d 74, 80 (3d Cir. 1989). "[A] sina [sic] qua non of a meaningful hearing is a sufficient explanation of the employer's evidence to permit a meaningful response." Id.

Under the circumstances presented here, where Homar was suspended from his position pending further investigation into his activities, it is clear that there was no compelling government issue at stake that would require ESU to immediately deprive Homar of his employment. Any concerns about preserving public safety or the integrity of the police force were met by Homar's suspension. The university thus was afforded the time it would need adequately to provide Homar a pre-deprivation hearing. The question for us to answer, then, is whether the university provided him such a hearing.

The district court concluded that the "administrative hearing" which took place on September 18 did not meet the due process requirements of a pre-deprivation hearing because it "did not allow [Homar] to make a meaningful response to the damaging information found in the supplemental report." D. Ct. Op., typescript at 15. We agree.

During the September 18 meeting, Levanowitz only told Homar that the State Police had given him some "evidence very serious in nature." App. at 164. While it safely can be presumed that Homar knew that ESU's concerns about his employment arose from his arrest on drug charges, Homar was not aware of the allegations made against him by the troopers that were presented in the Supplemental Report, namely that he allegedly confessed to knowing that Crompton and Habhab were drug dealers and to receiving marijuana from Habhab during his employment as a police officer. More to the point, Homar was completely unaware that Levanowitz had received a copy of the Supplemental Report containing these allegations. Under these circumstances it is very clear that Homar's right to a meaningful pre-deprivation hearing was denied. See Tucker, 868 F.2d at 80 (holding that suspended police officers who were not told anything specific about drug use allegations or the evidence regarding the allegations were deprived of their due process rights because they had no opportunity to explain or rebut evidence).

In spite of its conclusion regarding the insufficiency of the September 18 "administrative hearing," the district court entered summary judgment in favor of defendants because it concluded that Homar's September 24, 1995 meeting with President Gilbert, prior to which Homar had received and read the Supplemental Report, was a meaningful pre-termination hearing. D. Ct. Op., typescript at 16. Given that Homar was afforded an opportunity to review the Supplemental Report and offer meaningful responses to the allegations, we find that this meeting afforded Homar with sufficient procedural due process protections assuming it took place prior to his demotion becoming effective. While true that an employee is not entitled to a pre-decision hearing, see Chung v. Park, 514 F.2d 382, 387 (3d Cir.), cert. denied, 423 U.S. 948

(1975), only if this hearing took place before his demotion tookeffect can we conclude that he was afforded meaningful due process.

The district court held as a matter of law that Homar's dismissal from his position as a police officer took effect only after this meeting with President Gilbert. D. Ct. Op., typescript at 16. The district court found that the meeting, which took place at 2 p.m. on September 24, 1992, "occurred before Homar would have started his evening shift as police officer should Gilbert have decided to reinstate him to that position," id., and thus concluded that "Gilbert's decision that Homar could not return to ESU as a police officer is properly viewed as the point in time when Homar was deprived of his position as an ESU police officer." Id.

We disagree with the district court that the point in time at which Homar's demotion became effective is clear. There is substantial evidence in the record to support a conclusion that Homar's demotion took effect prior to this meeting. Homar's meeting with Gilbert took place on September 24 at 2:00 p.m. The letter which Levanowitz sent to Homar apprising him that he had been demoted to Groundskeeper was dated on September 23, 1992. In that letter, Levanowitz informed Homar that he was "to be demoted from [his] position as a Police Officer I in the Campus Police Department to the position of Groundskeeper, a position [he] formerly held." App. at 208 (emphasis added). The letter further required that Homar "report to work at 7:00 A.M. on September 24, 1992," to start his job as groundskeeper, and informed Homar that this "action is effective retroactive to August 26, 1992." App. at 208 (emphasis added). Homar testified during a deposition that he was already working as a groundskeeper at the time of his September 24th, 2:00 p.m. meeting with Gilbert. There is thus evidence suggesting that Homar had already been demoted to groundskeeper by the time this meeting took place. If this is true, then Homar was deprived of a meaningful pre-deprivation hearing.

The district court based its contrary conclusion on two grounds. First, the court determined that "[t]he significance of the meeting was that Gilbert held ultimate decision-making authority regarding whether Homar would remain employed by ESU as a police officer." D. Ct. Op., typescript at 15. However, this meeting with Gilbert never would have occurred had Homar's union representative not sought to arrange for the meeting with Gilbert. App. at 225. This fact seems to suggest that Levanowitz's demotion of Homar would have become effective without Gilbert's approval, which would render Levanowitz's letter the final demotion. Levanowitz's authoritative tone in the letter similarly supports this conclusion.

The district court also concluded that the meeting with Gilbert had taken place prior to Homar's demotion because it occurred before 4 p.m., the time at which Homar would normally begin his shift as a police officer. Id. at 16. We disagree that the timing of the demotion is so clear. We think there is certainly an issue of material fact as to whether Homar's demotion became effective on August 26, as stated in the letter; at 7:00 a.m. on September 24, the date he was told to report to work as a groundskeeper; or at 4:00 p.m. on September 24, the time at which Homar would normally report to work as a police officer. Unless

defendants expected Homar to act as both groundskeeper and police officer on September 24, the facts appear to support the conclusion that Homar's demotion was effective at the latest by 7 a.m. on the morning of September 24th, seven hours prior to his meeting with Gilbert.

We thus conclude that there is a genuine issue of material fact regarding the date and time at which Homar's demotion became effective, and that the district court's grant of summary judgment was therefore inappropriate. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (holding summary judgment is inappropriate if there is evidence "such that a reasonable jury could return a verdict for the nonmoving party."). Accordingly, we reverse the district court's entry of summary judgment regarding Homar's meaningful pre-deprivation hearing.

IV.

Homar also contends that there is an issue of material fact as to whether his substantive due process rights were violated. Relying on this court's precedent in Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 692 (3d Cir. 1993) in which we stated that "[a] violation of substantive due process rights is proven: . . . 'if the government's actions in a particular case were in fact motivated by bias, bad faith or improper motive. . . ,'" id.(quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 683 (3d Cir. 1991), cert. denied, 503 U.S. 984 (1992)), Homar points to several facts that he argues demonstrate that his suspension and demotion were motivated by bias, bad faith or improper motive.

The district court granted summary judgment in favor of defendants on this claim on the ground that there was no genuine issue of material fact as to whether Levanowitz, Gilbert or any other ESU official was motivated by bias, bad faith or improper motive.

While we agree with the district court that the evidence in this case does not support a conclusion that Levanowitz or any other ESU official was motivated by an improper motive in suspending and then demoting Homar, for there is, indeed, "nothing improper about conducting an investigation of a law enforcement officer who has been arrested, even if the charges are ultimately dismissed," D. Ct. Op., typescript at 23, we think that there is a question of material fact as to whether ESU officials acted in bad faith. Several events leading up to Homar's demotion suggest that Levanowitz did not engage in a good faith effort to accord Homar appropriate due process protection throughout his ordeal. Levanowitz never informed Homar that he had received and read the Supplemental Report prior to their September 18 meeting; Levanowitz ordered that a poll be taken among police officers regarding whether Homar should be allowed to return to the force, which is certainly a very strange proceeding outside the realm of traditional due process proceedings; and Levanowitz issued the September 23 letter of demotion prior to the meeting with President Gilbert -- a meeting which occurred only after Homar's union representative requested it take place. Such events might lead a reasonable fact-finder to conclude that Homar's demotion was pre-

determined and to view the entire demotion process as rigged to produce this result.

Our conclusion that there is a genuine issue of material fact as to whether ESU officials were motivated by bad faith, however, does not lead us to remand this matter simply for a factual finding. A more fundamental legal question must first be addressed, namely whether Homar's property interest in his state-created job is an interest worthy of protection under substantive due process. DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 598, 600 (3d Cir. 1993) (holding that before addressing the sufficiency of the evidence of improper motive, a court addressing a substantive due process claim should first consider whether the plaintiff possesses a property interest worthy of substantive due process protection). Although Homar has succeeded in making a procedural due process claim, under the law of this circuit "not all property interests worthy of procedural due process protections are protected by the concept of substantive due process." Reich v. Beharry, 883 F.2d 239, 244 (3d Cir. 1989). In order to state a substantive due process claim, "a plaintiff must have been deprived of a certain quality of property interest." DeBlasio, 53 F.3d at 600.

The parties did not address before the district court the question of whether a state-created property interest in employment is the "certain quality" of property interest worthy of protection under the substantive due process clause, nor did the district court consider it. While courts of appeals do have discretion to consider and resolve certain issues for the first time on appeal, such as where the proper resolution is not in doubt or where "'injustice might otherwise result,'" Singleton v. Wulff, 428 U.S. 106, 121 (1976) (quoting Hormel v. Helvering, 312 U.S. 552, 557 (1941)); see also Nelson v. County of Allegheny, 60 F.3d 1010, 1013 n.3 (3d Cir. 1995), it is a general rule that federal appellate courts do not consider an issue not passed upon below. Singleton, 428 U.S. at 120.

In the instant case, we think it appropriate to remand this issue for consideration in the first instance by the district court. Certainly this is not a situation where the proper resolution is clear. Rather, the case law of this circuit and the Supreme Court provides very little guidance as to what constitutes this "certain quality" of property interest worthy of protection under the substantive due process clause. We have held that "ownership is a property interest worthy of substantive due process protection," id., but we have found that neither interest in prompt receipt of payment for professional services provided to the state, Reich, 883 F.2d at 244-45, nor state law entitlement to water and sewer services, Ransom v. Marrazzo, 848 F.2d 398, 411-12 (3d Cir. 1988) are the "certain quality" of property interest worthy of substantive due process protection. We also have strongly suggested in dictum that a student's right to continued enrollment in a graduate program does not rise to such a level on the ground that such an interest bears "'little resemblance to the fundamental interests that previously had been viewed as implicitly protected by the Constitution.'" Mauriello v. U. of Med. & Dentistry of N.J., 781 F.2d 46, 40 (3d Cir. 1986) (quoting Regents of University

of Michigan v. Ewing, 474 U.S. 214, 229-30 (Powell, J., concurring).  None of the property interests formerly considered are especially analogous to the property interest in state-created employment.  Given the complexity of this issue, we think it appropriate to allow the district court the first opportunity to consider it.  Should this issue return to us on appeal, we will benefit from the district court's analysis.  Furthermore, we have already determined to remand this matter on the procedural due process ground as well, eliminating any concern about the injustice of delaying the final conclusion of this case.  Accordingly, we remand this question to the district court for consideration there.

V.

Additionally, Homar contends that a genuine issue of material fact exists as to whether Homar's due process rights were violated because defendants made public statements about his suspension that stigmatized Homar and damaged his reputation.  Specifically, Homar alleges that ESU violated his protected liberty interest in two ways.  First, he alleges that ESU seriously damaged his good name and reputation by publicly disclosing the charges against him.  Second, Homar alleges that ESU imposed a stigma or disability on him, foreclosing his freedom to take advantage of other employment opportunities.  We will address these two claims in turn.

A.

The Supreme Court has held that a person has a liberty interest in employment actions which require due process "where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him."  Roth, 408 U.S. at 573.  Homar claims that this liberty interest was implicated in the instant case because ESU's demotion of him "'damage[d] his standing and associations in the community.'"  Appellant's Brief at 28 (citing Roth, 408 U.S. at 573).  Homar may only prevail on this claim if he can demonstrate that the government "create[d] and disseminate[d] a false and defamatory impression about [him] in connection with his termination."  Codd v. Velger, 429 U.S. 624, 628 (1977) (per curiam).  See also Bishop v. Wood, 426 U.S. 341, 348-39 (1976).

Homar contends that ESU's disclosure of its investigation into his activities in a small article that appeared in the Pocono Record newspaper, coupled with his subsequent demotion, implicated his liberty interest. We disagree.  The article in the newspaper did not disclose any specifics regarding the nature of ESU's concern, nor did it disclose information about the disciplinary action ESU contemplated. Furthermore, the article appeared prior to his demotion, and there is no evidence to indicate that ESU publicly disclosed the outcome of its investigation or the fact that it demoted Homar to groundskeeper.  We accordingly find that Homar has no liberty interest claim.  See Tucker, 868 F.2d at 82 (holding that no liberty interest was implicated when press release about discharge of police officers was not misleading).

B.

Homar further alleges that ESU violated his liberty interest because it imposed "a stigma . . . that foreclosed his freedom to take advantage of other employment opportunities." Roth, 408 U.S. at 573.  Yet Homar has proffered no evidence to

suggest that the disciplinary actions taken by the university had in any way foreclosed other employment opportunities. Indeed, Homar testified at his deposition that he had not sought out a position with any other employer since his demotion. App. at 50. Furthermore, as noted above, Homar makes no allegations that any information in the newspaper article was untrue; the university never even publicly disclosed that Homar was terminated from his job as police officer. Under such circumstances, we cannot find that Homar's liberty interest was implicated. Tucker, 868 F.2d at 83.

Accordingly, we affirm the district court's issuance of summary judgment as to this issue.

## VI.

For the foregoing reasons, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

Homar v. Gilbert
No. 95-7218.
ALITO, Circuit Judge, concurring in part and dissenting in part.

I write separately for two reasons. First, I would hold, based on the undisputed facts of this case, that the university's suspension of Homar without pay and without a hearing did not violate the principles of procedural due process as interpreted by the Supreme Court. I thus dissent from section III.A of the majority's opinion. Second, although I do not disagree with the majority's decision to remand the substantive due process question to the district court, I wish to set forth my own views on that issue.

## I.

A. Due process does not always require a pre-suspension hearing. See, e.g., FDIC v. Mallen, 486 U.S. 230, 240-41 (1988); Barry v. Barchi, 443 U.S. 55, 63-66 (1979). In Mallen, the Supreme Court observed that "[a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." Id. at 240 (citations omitted); see alsoLogan v. Zimmerman Brush Co., 455 U.S. 422 (1982) ("[T]he timing and nature of the required hearing `will depend on appropriate accommodation of the competing interests involved. These include the importance of the private interest and the length or finality of the deprivation, the likelihood of governmental error, and the magnitude of the governmental interests involved.") (citations and footnote omitted). In my view, this exception should apply here. See, e.g., Ambus v. Granite Bd. of Educ., 975 F.2d 1555, 1562 (10th Cir. 1992), aff'd as modified on other ground, 995 F.2d 992 (10th Cir. 1993) (en banc).

Under the particular circumstances of this case, a pre-suspension hearing was not, in my view, essential. Within a few hours of the August 26, 1992, drug raid that resulted in Homar's arrest, the university learned that Homar had been charged with possession of marijuana, possession with intent to deliver

marijuana, and criminal conspiracy.  Homar did not report to work on August 26 for his 4:00 p.m. to 12:00 p.m. shift.  The next day, Homar called his police chief to say that he had been arrested and to ask whether he was suspended.  Homar was informed that he was suspended, and this was confirmed by letter delivered the same day.

I do not think that the university violated Homar's right to procedural due process when it suspended him from his position as a campus police officer after learning that he had been arrested and charged with drug violations.  There was probable cause to support the criminal charges and hence a substantial assurance that the deprivation was not baseless or unwarranted.  The university was certainly entitled to take the position that Homar could not be permitted to work as a campus police officer with such charges outstanding, and there was thus, as the majority concedes, a compelling government interest present.  And the university needed to act promptly.  The majority admits all of this but finds that the university had to suspend Homar with pay.  I find no requirement that in such circumstances a public employer must pay its suspended employees.

B.  In reaching its conclusion to the contrary, the majority declares that "a governmental employer may not suspend an employee without pay unless that suspension is preceded by some kind of pre-suspension hearing."  Majority Opinion, Typescript at 14.  The majority essentially announces a blanket rule that a public employer that wishes to suspend an employee -- even an employee in a public-safety position who has been charged with multiple felonies -- must either provide a pre-suspension hearing or suspend the employee with pay.  This holding is based on one sentence of dictum from Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 544-45 (1985), the Eleventh Circuit's reliance on that dictum in Everett v. Napper, 833 F.2d 1507, 1512 (11th Cir. 1987), and this court's opinion in Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064 (3d Cir. 1990).  These bases do not, in my view, withstand scrutiny.

With regard to Loudermill, I note that the Supreme Court there expressly recognized that "[t]here are, of course, some situations in which a postdeprivation hearing will satisfy due process requirements."  Loudermill, 470 U.S. at 542 n.7 (citations omitted).  It is of course true, as the Court later notes, that an employer can avoid any due process problems associated with keeping a dangerous employee on the job by suspending the employee with pay, id. at 544-45, "for then there is not a deprivation."  Bailey v. Board of County Commissioners of Alachua County, 956 F.2d 1112, 1124 n.13 (11th Cir.), cert. denied, 506 U.S. 832 (1992).  But as the Federal Circuit has explained, this "is merely descriptive, not normative.  We agree that in the instant case, the government could have suspended with pay.  Nevertheless, we cannot read Loudermillas holding that the government must suspend him with pay."  Engdahl v. Department of Navy, 900 F.2d 1572, 1578 (Fed. Cir. 1990).  I agree.

The Eleventh Circuit's decision in Everett, which was issued before the Supreme Court's decision in Mallen, simply relies on the Loudermill dictum.  Numerous courts of appeals have reached a

contrary conclusion regarding the import of Loudermill, particularly after Mallen. See Jones v. City of Gary, 57 F.3d 1435, 1441-45 (7th Cir. 1995) (no pre-suspension hearing required where firefighter was suspended without pay; plaintiff's property interests were adequately protected by post-deprivation hearing); id. at 1445-46 (Ripple, J., concurring) ("there are circumstances in which the need for swift action on the part of those who exercise governmental authority and responsibility for the safety and security of others can justify the elimination or truncation of even the bare-bones pretermination hearing required by Loudermill") (citations omitted); Chaney v. Suburban Bus Div. of the Regional Transp. Auth., 52 F.3d 623, 628 (7th Cir. 1995) (plaintiff bus driver suspended without pay after bus hit and injured pedestrian; no pre-suspension hearing necessary as employer's interests "clearly outweigh[ed]" those of plaintiff); Ambus v. Granite Bd. of Educ., 975 F.2d 1555, 1562 (10th Cir. 1992) (court discussed Loudermill but applied the Mallen exception where a teacher was suspended without pay and without a hearing after the school learned that the teacher had been arrested on drug charges; court stated that "the substantiated knowledge that a teacher had been arrested for drug sales raised a substantial government interest justifying immediate suspension without pay"), aff'd as modified onother ground, 995 F.2d 992 (10th Cir. 1993) (en banc); Strong v. Board of Educ. of Uniondale Union Free School Dist., 902 F.2d 208, 212 (2d Cir.) (citing Loudermill and Mallen, court concluded that, on balance, no pre-termination hearing required; court stressed that probable value of hearing was not very great because parties were well aware of each other's assertions), cert. denied, 498 U.S. 897 (1990); see also Richardson v. U.S. Customs Service, 47 F.3d 415, 418-19 (Fed. Cir. 1995) (discussing 5 U.S.C.  7513(b)(1)) ("[A]n indictment for a crime for which a sentence of imprisonment may be imposed will, as a general rule, provide reasonable cause for an agency to believe that the employee has committed such a crime, and, when the nature of the crime alleged relates to the employee's ability to perform his or her duties, an agency may summarily suspend the employee, without pay, pending the outcome of the criminal proceedings.") (citations omitted); Bailey v. Board of County Commissioners of Alachua County, 956 F.2d 1112, 1123-24 & n.13 (11th Cir.) (qualified immunity) (stressing flexibility of standard regarding necessity of pre-deprivation hearing where prison guard was suspended without pay upon his arrest), cert.denied, 506 U.S. 832 (1992); Gamble v. Webb, 806 F.2d 1258, 1261 (5th Cir. 1986) (relying upon Loudermill's statement that "`there are, of course, some situations in which a post-deprivation hearing will satisfy due process,'" and concluding, under Logan balancing test, that "the present one is such a situation") (quoting Loudermill, 470 U.S. at 542 n.7) (brackets omitted). All of these decisions -- like the Supreme Court's procedural due process cases in general and unlike the majority's blanket rule -- reflect a balancing of interests based on the particular circumstances of each case.

I also believe that the majority has misinterpreted our opinion in Bradley. Citing Bradley, 913 F.2d at 1077, the majority states that Bradley implies that suspension without pay and without

a pre-suspension hearing always violates due process. Majority Opinion, Typescript at 13-14. However, on the next page of the Bradley opinion, the panel clearly stated:

> We need not decide in this case whether Bradley was entitled to a pre-suspension hearing, as he contends, or whether a post-suspension hearing sufficed. CompareLoudermill, 470 U.S. at 544, 105 S.Ct. at 1494 (because government's interest in immediate termination of security guard who had lied when seeking employment did not outweigh employee's interest in retaining employment, pre-termination hearing was required) with FDIC v. Mallen, 486 U.S. 230, 108 S.Ct.1780, 1787-88, 100 L.Ed.2d 265 (1988) (because government had substantial interest in suspending indicted bank official to protect bank and depositors, a post-suspension hearing within a reasonable time was sufficient).
>
> Bradley received no hearing, either before or after the suspension, and hence if he was suspended, as the record suggests, he was deprived of due process.

913 F.2d at 1078. In my view, far from implying anything, the Bradley panel expressly reserved decision on the issue presented in this case.

I would resolve that issue in this case by following the great weight of federal appellate authority cited above and holding that whether a pre-suspension hearing was required in this particular case requires a balancing of the relevant factors. For the reasons already expressed above, I would hold that in the circumstances of this case, a pre-suspension hearing was not required and that a post-suspension hearing within a reasonable time after the suspension was sufficient. It may be that the university failed to conduct a sufficiently prompt or adequate post-suspension hearing after the criminal charges were dismissed on September 1, 1992, but that is a different question. Moreover, as in Strong, I am not sure how a pre-suspension hearing on August 26, 1992, would have made any difference. The only fact important to the university's decision was whether Homar had been arrested and charged. Homar did not dispute this, and in fact confirmed it the next day; Homar was well aware of the reasons for his suspension. As in Strong, the hearing required by the majority would have been "an empty formality." See Strong, 902 F.2d at 212.

C. I have one final problem with the section of the majority opinion dealing with the need for a pre-suspension hearing. The majority assumes that an important government interest requiring prompt action is what permits an employer to suspend an employee without a pre-suspension hearing but with pay. I think that this is inaccurate. It is my understanding that a public employer may generally suspend a public employee for cause, with pay, and without a hearing -- even absent an emergency situation -- because such a suspension does not ordinarily implicate any constitutionally protected property interest. See, e.g., Hicks v. City of Watonga, 942 F.2d 737, 746 n.4 (10th Cir. 1991) ("[N]o property interest was infringed at Mr. Hicks' first round of hearings when he was suspended and then reprimanded. Mr. Hicks

suffered no loss in pay because of the pre-hearing suspension. Suspension with pay does not raise due process concerns.") (citations omitted); Pitts v. Board of Educ. of U.S.D. 305, Salina, Kansas, 869 F.2d 555, 556 (10th Cir. 1989) (same); see alsoHardiman v. Jefferson County Bd. of Educ., 709 F.2d 635, 637-38 & n.2 (11th Cir. 1983) (not deciding but questioning whether suspension with pay could ever constitute deprivation of property interest, and opining that "bad-faith" suspension with pay might infringe liberty interest); Koelsch v. Town of Amesbury, 851 F. Supp. 497, 500 (D. Mass. 1994) ("A public employee's suspension with pay does not implicate a constitutionally protected property interest.") (citations omitted). Under the majority's reasoning, the important government interest requiring prompt action is rendered a nullity because it simply allows the employer to do what it could do in a typical non-emergency, for-cause suspension situation, i.e., suspend the employee with pay.

II.

Although I do not disagree with the majority's determination that a remand is in order on Homar's substantive due process claim, I write separately to set forth my views on the viability of that claim. I do not think that a plaintiff has a substantive due process claim for a non-legislative deprivation of a state-created property right by a public employer. Moreover, if Homar has a substantive due process claim in this context, it seems to me that he must show that the employer's actions were not rationally related to a legitimate government interest; mere allegations of bad faith cannot suffice.

A. Neither the Supreme Court nor this court has previously held that a plaintiff has a substantive due process claim for a non-legislative deprivation of a state-created property interest by a public employer. The Eleventh Circuit recently overruled a decade of its own decisions recognizing such claims. McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994) (en banc), cert. denied, 115 S. Ct. 898 (1995); see also Rivkin v. Dover Twp. Rent Leveling Bd., 671 A.2d 567 (N.J. 1996). Essentially for the reasons stated in McKinney, which I find persuasive, I believe that Homar's allegations state only procedural due process claims.

In McKinney, the Eleventh Circuit considered the following issue: "whether, under the Fourteenth Amendment, a government employee possessing a state-created property interest in his employment states a substantive due process claim, rather than a procedural due process claim, when he alleges that he was deprived of the employment interest by an arbitrary and capricious non-legislative government action." Id. at 1553. Sitting en banc, a unanimous Eleventh Circuit answered "no," and in an effort to bring its cases back into line with Supreme Court precedent, overruled a decade of its prior decisions. The court held that "in non-legislative cases, only procedural due process claims are available to pretextually terminated employees." Id. at 1560; see alsoRivkin, 671 A.2d at 577 (plaintiffs' purported substantive due process claim "is much closer to a procedural due process claim" in that it "amounts to an allegation that the State failed to furnish an impartial tribunal, which `is a matter of procedural, not

substantive, due process'") (citations omitted).

Two aspects of the Eleventh Circuit's opinion in McKinney bear emphasis here.  First, the court concluded that allegations of arbitrary and capricious action by governmental employers affecting an individual's property interest in public employment "will not make out a substantive due process claim under the jurisprudence of the Supreme Court . . . because only procedural issues are implicated."  Id. at 1559 (emphasis in original); see also id. at 1561 ("McKinney's allegation is procedural:  the County failed to provide one of the elements of procedural due process -- an unbiased decisionmaker.").  I agree, as I discuss further below.

Second, crucial to the court's decision was the distinction between legislative acts and non-legislative or executive acts. Executive acts, such as employment decisions, typically apply to one person or to a limited number of persons, while legislative acts, generally laws and broad executive regulations, apply to large segments of society.  Id. at 1557 n.9.  The court criticized its prior decision in Hearn v. City of Gainesville, 688 F.2d 1328 (11th Cir. 1982) -- its first case to apply substantive due process analysis to an arbitrary termination claim --  because "[i]n that case, where a terminated employee challenged an executive act, we cited Nebbia [v. New York, 291 U.S. 502 (1934)], where a legislative act (to wit, a law) was at issue."  Id. at 1558 n.14. The court added that "[i]t is imperative that a stricter segregation of these two distinct case-categories be maintained." Id.  The court indicated that rational basis review under the substantive component of the Due Process Clause is appropriate only in the context of challenges to legislative action.  Id. at 1557-58 & nn. 9 & 14; see also TRM, Inc. v. United States, 52 F.3d 941, 945 & n.17 (11th Cir. 1995) (applying rational basis review to substantive due process challenge to regulation under Food Stamp Act and noting that "[t]his standard is not affected by our decision in McKinney" because "[t]he holding of that case was specifically limited to substantive due process challenges to non-legislative acts") (citations omitted); Sullivan Properties, Inc. v. City of Winter Springs, 899 F. Supp. 587, 594-96 (M.D. Fla. 1995) (considering the impact of McKinney on substantive due process challenges in the area of zoning and the granting of building permits; concluding that there is a "substantive due process cause of action for arbitrary and unreasonable zoning ordinances" but not for "substantive due process claims [challenging] executive acts granting or denying a particular building permit application").  I again agree.

Like the prior decisions in the Eleventh Circuit, a decision allowing Homar to maintain a substantive due process claim based on an allegation of bad faith would elevate Homar's procedural challenges to substantive due process status.  Assuming that there is a factual issue regarding whether defendants acted in bad faith, I question the wisdom of recognizing a substantive due process claim where a university fails to provide adequate procedural due process and where the way in which procedural due process is denied could give rise to an inference of bad faith.  This sort of "substantive procedural due process claim" is precisely what troubled both the Eleventh Circuit in McKinney and a unanimous New

Jersey Supreme Court in Rivkin, and I would not recognize such a claim.  It seems to me that Homar's claim is clearly procedural and should be recognized as such.

Further, the cases upon which Homar relies essentially derive -- as is discussed more fully below -- from Pace Resources, Inc. v. Shrewsbury Tp., 808 F.2d 1023 (3d Cir.), cert. denied, 482 U.S. 906 (1987), and Rogin v. Bensalem Tp., 616 F.2d 680, 689 (3d Cir. 1980), cert. denied, 450 U.S. 1029 (1981), both of which involve challenges to zoning ordinances and thus challenges to legislative acts.  The cases that have applied Pace Resources and Rogin in challenges to non-legislative acts have, in my view, fallen into the trap identified by the Eleventh Circuit in McKinney.  I would not extend them into the public employment setting.

B.  Assuming for the sake of argument that there is a substantive due process claim for arbitrary and capricious non-legislative actions by public employers and that Homar's interest in his position as a campus police officer constituted a "property" interest for substantive due process purposes, I nonetheless conclude that Homar seeks application of the wrong standard in evaluating his claim.  Under true rational basis review -- which is the most that Homar is entitled to where he is asserting the violation of a non-fundamental, state-created property interest -- I think that Homar failed to create a fact issue as to whether the university violated his substantive due process rights.

The appropriateness of summary judgment as to Homar's substantive due process claim requires consideration of what Homar must show to establish a substantive due process violation.  Homar argues that our cases hold that a plaintiff can establish a substantive due process violation by proving that the government's actions were motivated by bias, bad faith, or improper motive.  Homar contends that a public employee who suffers an adverse employment decision may maintain a substantive due process claim against the public employer by showing (1) that the employer's actions were not rationally related to a legitimate government interest or (2) that the employer's actions were motivated by (a) bias, (b) bad faith, or (c) improper motive.  I do not agree.

First, as I alluded to above, we have never applied this test in the public employment context, and I would not extend this test to this context, whatever its appropriateness in other contexts. Further, it seems to me that the statements in our opinions regarding the nature of rational basis review in substantive due process cases have evolved in a strange and, I think, unintended way.  Beginning with unobjectionable descriptions of classical rational basis review, our opinions eventually reached the point of suggesting that a plaintiff can state a substantive due process claim merely by alleging that an individual decision resulting in the deprivation of a property right was taken in bad faith.  The Supreme Court has never sanctioned such a broad proposition, and I am confident that this cannot be the law.  If a plaintiff like Homar has a substantive due process claim in this context, it seems to me that he must show that the employer's actions were not rationally related to a legitimate government interest and that mere allegations of bad faith cannot suffice.

In Pace Resources, Inc. v. Shrewsbury Tp., 808 F.2d 1023 (3d

Cir.), cert. denied, 482 U.S. 906 (1987), plaintiff challenged a municipality's land use restrictions on substantive due process grounds. In describing the "narrow review" over zoning ordinances, we quoted our prior decision in Rogin v. Bensalem Tp., 616 F.2d 680, 689 (3d Cir. 1980), cert. denied, 450 U.S. 1029 (1981):

> "The test for determining whether a law comports with substantive due process is whether the law is rationally related to a legitimate state interest. `[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.'"

808 F.2d at 1034 (quoting Rogin, 616 F.2d at 689) (quoting Williamson v. Lee Optical, 348 U.S. 483, 487–88 (1955)) (brackets in Rogin). We explained that "[a] plaintiff making a substantive due process claim in federal court has the burden of showing that the regulation is arbitrary or irrational. Thus to state a claim, Pace's complaint would have to allege facts that would support a finding of arbitrary or irrational legislative action by the Township." Id. at 1035 (citations omitted). After concluding that "Pace's complaint fails to make any factual allegations that indicate irrationality" and that "Pace does not present a case involving actions aimed at this developer for reasons unrelated to land use planning," we concluded that "[b]ecause it appears on the face of the amended complaint that the Township decisionmakers could have had rational reasons for the decisions contested here and because that complaint alleges no facts suggesting arbitrariness, it fails to state a substantive due process claim upon which relief can be granted." Id. at 1035–36 (citation omitted).

In Bello v. Walker, we noted the rational basis review articulated in Pace Resources, but we focused on the language from Pace stating that the plaintiff there did not allege "actions aimed at this developer for reasons unrelated to land use planning." Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir.) (citation omitted), cert. denied, 488 U.S. 851 (1988). We thus distinguished Pace Resources and announced as follows:

> We need not define, at this juncture, the outer limits of the showing necessary to demonstrate that a governmental action was arbitrary, irrational, or tainted by improper motive. The plaintiffs in this case presented evidence from which a fact finder could reasonably conclude that certain council members, acting in their capacity as officers of the municipality improperly interfered with the process by which the municipality issued building permits, and that they did so for partisan political or personal reasons unrelated to the merits of the application for the permits. These actions can have no relationship to any legitimate governmental objective, and if proven, are sufficient to establish a substantive due process violation actionable under section 1983.

Id. at 1129–30 (footnote omitted).

Next, the panel in Midnight Sessions paraphrased Bello and stated that "a plaintiff may maintain a claim of substantive due process violation upon allegations that the government deliberately and arbitrarily abused its power." Midnight Sessions, Ltd. v. City of Phil., 945 F.2d 667, 683 (3d Cir. 1991) (citation omitted), cert. denied, 503 U.S. 984 (1992). "Thus, allegations that the government's actions in a particular case were motivated by bias, bad faith, or improper motive . . . may support a finding of substantive due process violation." Id. (citing Bello and Pace Resources).

In Parkway Garage, Inc. v. City of Phil., 5 F.3d 685, 692 (3d Cir. 1993), we explained that "[s]ubstantive due process protects citizens from arbitrary and irrational acts of government." Id. at 692 (citing Rogin v. Bensalem Tp., 616 F.2d 680, 689 (3d Cir. 1980), cert. denied, 450 U.S. 1029 (1981)). We then stated the following test (which is the test quoted by the parties in this case): "A violation of substantive due process rights is proven: (1) if the government's actions were not rationally related to a legitimate interest; or (2) `if the government's actions in a particular case were in fact motivated by bias, bad faith or improper motive.'" Id. (citation omitted); see also Blanche Road Corp. v. Bensalem Tp., 57 F.3d 253, 263 (3d Cir.), cert. denied, 116 S. Ct. 303 (1995).

From Rogin to Parkway Garage, then, we have moved from inquiring merely whether a legislative act survived pure rational basis review to inquiring whether actions by specific defendants vis-a-vis a specific plaintiff were somehow improper. It seems to me that our cases began looking to governmental conduct that might prove a lack of rational basis, but we have now set forth an entirely separate test for evaluating substantive due process claims that is independent of standard rational basis review. See also Rivkin, 671 A.2d at 576-77 (declining to follow DeBlasio and Bello and stating that "[i]t is a mistake . . . to equate the concept of `arbitrary and irrational' governmental land use decisions with the substantive component of the Due Process Clause of the Fourteenth Amendment"). In my view, the court should take the next available opportunity to clarify that the appropriate test is true rational basis review.

If we are to recognize substantive due process claims in the public employment context -- which, for the reasons discussed above, I think would be a mistake -- then, in my view, we should ask merely whether the plaintiff can show that the employer's actions were not rationally related to a legitimate government interest. It should not be enough to allege bad faith by a single governmental actor; the overall conduct complained of must be unrelated to any legitimate governmental interest. If this mode of analysis is applied to this case, I think that it is clear that the university's actions were rationally related to its legitimate interests, and, indeed, Homar does not contend otherwise.

C. In sum, substantive due process applies where there is a fundamental right at stake or legislation is challenged as having no rational relationship to any legitimate government interest. Here, plaintiff suggests no fundamental right within the meaning of the substantive component of the Due Process Clause; nor is

plaintiff challenging a legislative act on rational-basis grounds. In my view, then, plaintiff has no substantive due process claim on the undisputed facts presented.

## III.

For the foregoing reasons, I respectfully dissent from the majority's conclusion, set forth in section III.A, that Homar had a right to a hearing prior to his suspension. Although I join in section IV of the opinion remanding the substantive due process issue to the district court, I do not believe that Homar's substantive due process claim should survive a motion for summary judgment on remand.