Jayne E. COOVER, Plaintiff,

v.

SAUCON VALLEY SCHOOL DISTRICT, Susan Baxter, Claudia Gilman, Michael Karabin, Michael Lazar, and Robert Os-mun, Defendants.

Civil Action No. 95–7303.

United States District Court, E.D. Pennsylvania.

Feb. 26, 1997.

Keith O. Brenneman, Philip H. Spare, Mechanicsburg, PA, for plaintiff.

Michael I. Levin, Mark W. Voigt, Huntingdon Valley, PA, for defendant school district.

Stuart L. Knade, Harrisburg, PA, for individual defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

## I.  BACKGROUND

### A.  Factual History

We have before us a defense motion for summary judgment filed on September 17,

1996. Mindful of the standards of review[1] we will begin with the history of this matter.

Effective October 25, 1993, Saucon Valley Board of School Directors ("School Board") entered into an employment contract with Plaintiff Jayne E. Coover ("Coover"). Under the terms of her contract, Coover was to serve as the Superintendent of Schools (a position tantamount to chief executive officer) of the Saucon Valley School District ("School District") for a term ending July 30, 1997.

On December 5, 1994, as part of a monthly administrative staff meeting, Plaintiff arranged for Reverend Vega–Neel, a citizen of the School District (and a former School Board member), to speak to the administrators. Some of Vega–Neel's remarks focused on citizen groups that allegedly were opposed to public education. According to Plaintiff, near the end of his presentation, Vega–Neel mentioned several School Board members by name, connecting them to the groups allegedly opposed to public education. (Pl.'s Br. at 34, Defs.' Ex. G at 170–171). Plaintiff concedes that she remained silent both during and after Vega–Neel's presentation. (Pl.'s Br. at 34).

The School Board took no action concerning the December 5, 1994 administrative meeting during the months that followed. A letter or e-mail addressed to someone other than Plaintiff written by School District Solicitor Charles E. Steele ("Solicitor Steele") on June 11, 1995 indicated that the School Board had learned of the December 1994 meeting only a week earlier. The correspondence contained a description of some of the evidence that formed the basis for charges to be made against Plaintiff. It also noted that the School Board wanted to fire Plaintiff and that a press release was being prepared to educate the public about Plaintiff's "self dealing with her political activity." An internal memo dated June 8, 1995 from Solicitor Steele noted that "Coover is being asked to

investigate another Policy 321 violation. She will have to lie to avoid implicating herself."

A letter dated June 9, 1995 from School Board President Susan Baxter and Vice President Michael Karabin gave Plaintiff a personal, nondelegable directive to investigate a violation of Policy No. 321 associated with the distribution of political material into school mailboxes by the teacher's association. The letter directed Plaintiff not to show the memorandum to anyone and to make a complete written report by June 19, 1995 detailing (among other things) "whether any other employee of the District has violated Policy 321 by using school time or property for political purposes." Plaintiff made a written response dated June 16, 1995 which reported on the incident with the teacher's association but which did not implicate herself in a violation of Policy No. 321. At a School Board meeting held on June 19, 1995, the School Board, on the advice of Solicitor Steele, voted by 5–4 to suspend Plaintiff with pay pending further investigation of charges against her. On that date the School Board voted 5–3 to order Plaintiff to leave the executive session of the School Board over her strenuous objections. The School Board majority authorized Solicitor Steele to issue a letter he had drafted suspending Plaintiff. He gave it to her immediately following the meeting. According to Plaintiff, she attempted to explain her side of the story to Solicitor Steele at that point, but was told not to say anything. The letter ordered Plaintiff to turn in her keys and directed her not to report for work.

The letter suspended Plaintiff with pay. It informed her that she would be suspended without pay and that formal charges would be filed against her if she did not articulate a convincing reason why they should not be filed within less than three days. Specifically, the letter stated in pertinent part:

> You are hereby notified that pursuant to Section 1080 of the Public School Code, the Board of School Directors of the Saucon Valley School District ("District") plans to

---

1. Our factual discussion presents facts upon which all parties agree. In addition, when there is a conflict we have presented the version set forth in Plaintiff's brief. Pursuant to an oral stipulation of counsel taken over the telephone and recorded by a court stenographer on February 14, 1997 and approved by the court all of the exhibits presented by the parties in support of this motion are authentic and properly before the court with the sole exception of Plaintiff's Exhibit 26. Consideration of Exhibit 26 would not affect our decision.

consider charges for your discipline and/or dismissal from employment as District Superintendent for neglect of duty and intemperance. These charges are based upon recently discovered allegations that you were responsible for scheduling Tom Vega–Neel as a guest speaker at a regularly scheduled administrative meeting on December 5, 1994 ... This meeting was held during school hours in flagrant violation of District Policy No. 321 which prohibits District employees from using school time for political purposes and further provides that discipline, including dismissal, may be imposed for such violations ... At 11:00 a.m. on Thursday, June 22, 1995, you and/or your legal counsel are invited to informally respond to this letter by meeting with me at my offices in Quakertown. If you do not accept this invitation to informally respond, I· will assume you have elected not to communicate your position in connection with this matter. Please notify me by the end of the business day on June 21, 1995, whether you intend to meet with me on June 22, 1995 ... If you do not articulate a convincing reason why charges should not be filed or resign by noon on Thursday, June 22, 1995, I will present formal charges against you to the School Board. If the School Board approves charges against you, such charges will be presented or mailed to you or your identified legal counsel in anticipation of the July 17, 1995, hearing. In the event that charges are leveled against you by the School Board, you will be suspended without pay pending disposition of the same effective June 23, 1995.

(Defs.' Ex. F–2). Plaintiff read and understood Solicitor Steele's letter of June 19, 1995. On June 21, 1995 Plaintiff's counsel sent a letter to Solicitor Steele declining the invitation to meet with him, stating that "She is innocent of the allegations made in your letter. In light of the threatened litigation, Dr. Coover will not discuss her position except in accordance with law." Neither Plaintiff nor her counsel asked for more time before meeting with Solicitor Steele, nor did they ask for the details of the evidence against her, nor for access to her office files. Solicitor Steele's deposition stated that he would have acceded to a request for more time and that he would have shared all the evidence he had with Plaintiff during the meeting. On June 22, 1995 the School Board majority issued more extensive formal charges and suspended Plaintiff *without* pay effective the following. day. Plaintiff did not attend this public meeting. Also, on June 22, 1995, on the recommendation of Solicitor Steele, the School Board appointed attorney Merle K. Mermelstein to be legal advisor to the School Board at Plaintiff's dismissal hearing and to preside over the hearing. This hearing commenced on July 17, 1995 and continued through subsequent sessions held on July 31, August 1, August 9, August 24, and September 19, 1995. Solicitor Steele acted as the prosecutor and all members of the School Board acted as factfinder. At the hearing, Plaintiff was represented by counsel and testified before the School Board. She exercised her opportunity to cross examine each of the witnesses presented against her. Plaintiff submitted testimonial and documentary evidence on her own behalf, including numerous documentary exhibits.

On September 19, 1995, at the conclusion of the hearings, and after deliberation, the School Board found by a 5 to 3 vote that Coover was "guilty" of "neglect of duty" and "intemperance." This vote was along partisan lines. After giving Coover's attorney an opportunity to make a further presentation of evidence with regard to the appropriate disciplinary action, the School Board voted to dismiss Coover from her employment. On November 6, 1995, the School Board adopted a written adjudication drafted by Solicitor Steele.

**B. Postdismissal Procedural History**

On November 21, 1995 Plaintiff appealed her dismissal to the Northampton County Court of Common Pleas, in accordance with Pennsylvania's Local Agency Law, 2 Pa.C.S. § 551 et seq. She noted that she was reserving her rights to pursue her federal claims in federal court and that any constitutional claims were made under Constitution of the Commonwealth of Pennsylvania. The School District was the only respondent in that action. On the same date, she filed this action

against the School District and the School Board majority that had voted against her ("Board Members") in both their individual and official capacities (collectively "Defendants"). Jurisdiction was based on 28 U.S.C. §§ 1331 and 1343. Coover made claims under 42 U.S.C. §§ 1983, 1985, and § 1988 in four counts as follows:

Count I (procedural due process),

Count II (substantive due process),

Count III (First Amendment), and

Count IV (conspiracy).

On March 7, 1996, we denied Defendant Board Members' motion to dismiss and permitted additional discovery. On July 10, 1996 Judge Jack Panella of the Court of Common Pleas of Northampton County found that the adjudication and action in dismissing Coover as superintendent must be set aside given the "clear and convincing evidence of an appearance of bias, if not definite bias, in certain members of the Board" and a taint in the proceedings occasioned by Solicitor Steele's actions. On September 4, 1996, Judge Panella, after conducting a de novo review of the merits in accordance with Local Agency Law, entered a decision. In addition to numerous factual findings, Judge Panella concluded as a matter of law that:

1.  The Court has properly reviewed the record as certified from the School District, and as supplemented by Dr. Coover on May 24, 1996.

2.  Proper notice and an opportunity to defend was provided to Dr. Coover.

3.  The evidence presented at the hearings was insufficient to establish a "neglect of duty," therefore Dr. Coover could not be dismissed pursuant to 24 Pa. Stat. Ann. sec. 10–1080.[2]

4.  The meeting held on December 5, 1994 violated School Policy No. 321 and warrants a reprimand under School Policy No. 321.

5.  Under 42 Pa. Cons.Stat.Ann. sec. 706 and School Policy No. 321 the court has

the authority to issue a reprimand to Dr. Coover under the facts of this case.

6.  Dr. Coover's request for counsel fees, costs and expenses should be denied as having no foundation in law.

(Defs.' Ex. L–6 at 21).

Accordingly, on September 4, 1996 Judge Panella ordered Plaintiff reinstated as Superintendent with all back pay and fringe benefits since date of suspension and also ordered a reprimand to be entered in her personnel records. The School District appealed Judge Panella's order which operated as an automatic supersedeas, preventing Plaintiff's reinstatement and payment of wages.

On September 17, 1996 all named Defendants filed this motion for summary judgment. Plaintiff moved for an extension of time to respond to Defendants' motion on September 23, 1996. We granted this motion on October 3, 1996. Plaintiff filed her response on November 4, 1996. On November 8, 1996 we permitted Defendants to file a reply brief. After we allowed an extension of time, Defendants' reply was filed on December 4, 1996.

## II.  STANDARDS OF REVIEW

### A.  Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered where:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Rule 56(e) further provides that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."

In making its ruling on a summary judgment motion, the court must view all inferences in a light most favorable to the nonmoving party. *United States v. Diebold,*

---

**2.**  According to the September 4, 1996 decision of the state court, the School District had withdrawn its position that Coover's conduct amount-

ed to "intemperance." (*See* Defs.' Ex. F–6 at 6 n. 2).

*Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A "genuine issue of fact" is present, precluding summary judgment, "when a reasonable trier of fact, viewing all the evidence, could rationally find in favor of the nonmoving party in light of the burden of proof placed on the nonmover." *United States v. Premises Known as RR No.1 Box 224, Dalton, Scott Tp. and North Abington Tp., Lackawanna County, Pa.*, 14 F.3d 864, 870 (3d Cir.1994). The substantive law identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id. See also Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993). (summary judgment is precluded if disputed fact exists which might affect outcome of suit under controlling substantive law).

The Supreme Court has held that:

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In a motion for summary judgment, the nonmoving plaintiff's burden is more than insignificant. *See J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990) *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (although the moving party has the initial burden of identifying the evidence that demonstrates the absence of a genuine issue of material fact, the nonmovant must establish the existence of each element on which it bears the burden of proof). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 (1986). *See also Coolspring Stone Supply, Inc. v. American States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir.1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir.), *cert. denied*, 510 U.S. 994, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993) (nonmovant must do more than create some metaphysical doubt).

While the nature of its remedy is indeed powerful, the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555 [citation omitted].

### B. Civil Rights [3]

■ Section 1983 provides for the imposition of liability on any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or the laws of the United States. 42 U.S.C.A. § 1983 (1996). The statute is not a source of substantive rights, but merely provides " 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979)).

To state a claim under § 1983, a plaintiff must show both that (1) the offending conduct was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiffs of rights secured by the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct.

---

**3.** We will not discuss the standards for liability under 42 U.S.C. § 1985, as Plaintiff withdrew the conspiracy claims set forth in Count VI of her complaint without presenting any evidence or explaining why Defendants were not entitled to judgment as a matter of law. (*See* Pl.'s Br. at 20 n. 1). Accordingly, we will grant Defendants' summary judgment on Count IV.

1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The dispute in this action concerns the latter.

## III. DISCUSSION

### A. Count III First Amendment Claims

Plaintiff's First Amendment claims in Count III should be dismissed because there is no dispute of relevant material fact and Defendants are entitled to judgment as a matter of law. Defendants argue that Plaintiff's First Amendment claims should be dismissed on two major grounds. First, they argue that Plaintiff has acknowledged that she has not engaged in any protected speech because she bases her claim upon her silence during Vega–Neel's presentation and acknowledges that Vega–Neel was not expressing her point of view. Second, they argue that the School Board's decision to fire her for violating Policy No. 321 for engaging in political activity during the presentation cannot support a First Amendment claim because it is a viewpoint neutral policy prohibiting on-duty political activity.[4]

■ Plaintiff opposes Defendants' motion on two grounds. In response to Defendants first argument, Plaintiff argues that because the Board Members purport to have fired her for remaining silent in the face of an illegitimate demand for speech, Policy No. 321 was applied to her unconstitutionally to regulate content. She makes this claim under *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Watters v. City of Philadelphia,* 55 F.3d 886, 892 (3d Cir. 1995); and *Waters v. Churchill,* 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994). Second, she argues that Policy No. 321 is void for vagueness as applied. While the bulk of this argument stresses the pretextual nature of her discharge, she does cite *Connally v. General Constr. Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926) and *Cohen v. San Bernardino Valley College,* 92 F.3d 968 (9th Cir.1996) for the proposition that Policy No. 321 is vague as applied to her.[5]

#### 1. Protected Speech

■ Even if we accept Plaintiff's version of the facts, Plaintiff's speech was not protected. The government as employer has far broader powers than the government as sovereign. *Churchill,* 511 U.S. at 671–73, 114 S.Ct. at 1886. For a public employee's speech to be protected, we must determine as a matter of law whether that employee is speaking as a citizen on a matter public concern. *Connick,* 461 U.S. at 146–47, 148 n. 7, 103 S.Ct. at 1689–90, 1690 n. 7. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."

**4.** Defendants also argue that even if Policy No. 321 had not been in effect the School Board could have dismissed her for campaigning to oust the School Board majority. Because we do not think that what the School Board could have done is dispositive, we will not rest our decision on this ground.

**5.** We note that Plaintiff's argument that her discharge was pretextual does not help her argument that her speech is protected under *Pickering, Watters, Connick,* and *Churchill* as discussed below. Even if speech is a matter of public concern, Plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Watters,* 55 F.3d at 892. Plaintiff's arguments that her discharge was pretextual appear to concede that the incident with Vega–Neel was not a substantial or motivating factor in her discharge. However, since she appears to be making this argument in the alternative, we will still treat her contention that Policy No. 321 was unconstitutionally vague as applied to her.

We note as well that the School Board's actual motivation would be relevant if Plaintiff was arguing that she was being fired for some activity in addition to her silence during the Vega–Neel incident which was protected by the First Amendment. *See Churchill,* 511 U.S. at 681–83, 114 S.Ct. at 1891. However, Plaintiff in answer to an interrogatory asking her to factually describe each occasion on which she engaged in speech contended by her to be protected by the First Amendment of the United States Constitution and which was the basis for her dismissal, limited her response to her silence at the administrative meeting with Vega–Neel. (Defs.' Br. at 35). Thus, Plaintiff has conceded that even if her discharge for violation of Policy No. 321 was pretextual, she was not dismissed for other activities protected by the First Amendment.

*Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690. In order to be protected, the employee's interest as a citizen in expressing herself on the matter of public concern must not be outweighed by any injury the speech could cause to "the interest of the State, as employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734–35. *See also Watters,* 55 F.3d at 892 (citing *Churchill,* 511 U.S. at 667–69, 114 S.Ct. at 1884). This inquiry is made as a matter of law. *Connick,* 461 U.S. at 150 n. 10, 103 S.Ct. at 1692 n. 10. "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Id.* at 151–52, 103 S.Ct. at 1692. Before taking action, an employer need not allow "events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest." *Id.* at 152, 103 S.Ct. at 1692. The more the employee's speech involved matters of public concern, the more the employer must show a hindrance to public efficiency. *Id.*

■ Even under Plaintiff's version of the facts in this case, she was not acting as a citizen speaking on matters of public concern during the incident with Vega–Neel. While Plaintiff is correct that our courts have recognized that the first amendment has recognized the right to remain silent under *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), Plaintiff's silence in this context indicates that she was not speaking as a citizen on a matter of public concern. Her silence did not impact the interest in having free and open debate vital to informing decision-making by the electorate. *See Pickering,* 391 U.S. at 571–72, 88 S.Ct. at 1736–37. Her silence was in the context of a presentation on school property during school time which was presented to professional staff. Plaintiff claims that in scheduling Vega–Neel she was fulfilling her duty as a superintendent to direct her professional staff to attend "meetings designed to improve the professional standing of employees ..." under District Policy No. 333. (Pl.'s Br. at 31, 35). Plaintiff has admitted that Vega–Neel was not expressing her point of view. She has admitted that she was only present-

ing an inservice workshop to administrators to better inform them of their role as public educators. Coover agrees she had no input into Vega–Neel's comments. Thus, by her own admissions, her silence took place in a context in which she acted not as a citizen on a matter of public concern, but as a employee in the private context of administering a program for government staff. By her own admissions she did not hope to contribute to the public debate by remaining silent during a meeting that took place on school time, on school property for school purposes. Thus, her interests as a citizen in speaking on a matter of public concern are not implicated in this matter and her speech is not protected.

■ Even assuming that such an interest as a private citizen was implicated because of the content of Vega–Neel's speech, the School District's interest in efficient operations would outweigh Plaintiff's interests. Plaintiff has agreed with those elements of her job description that required her to support school board policy and actions to the public and staff and to refrain from criticism of individual board members. (Defs.' Br. at 37). Thus, Plaintiff effectively acknowledges that her position in public employment is such that the appearance of certain forms of public criticism of the superior by the subordinate would seriously undermine the working relationship between them. *See Pickering,* 391 U.S. at 570 n. 3, 88 S.Ct. at 1735 n. 3. Likewise, the working relationship between Plaintiff and her staff is implicated, because the appearance of criticism of the School Board by Plaintiff at an inservice meeting could undermine working relationships and efficiency at the school by making the staff feel it needed to choose sides. (*See* Defs.' Ex. 6 at 7–9). We give these interests strong weight. Plaintiff does not dispute that relationships with Board Members deteriorated when they learned of Vega–Neel's speech at a meeting over which Plaintiff silently presided. (*See* Pl.'s Br. at 37). Even if she did, it is also undisputed that some administrators felt that they needed to choose sides as a result of the incident. (Defs.' Ex. 6 at 7–9). Matters of public concern are only incidentally involved, if at

all. *See Churchill,* 511 U.S. at 681, 114 S.Ct. at 1891 ("An employee who makes an unprotected statement is not immunized from discipline by the fact that this statement is surrounded by protected statements.") Thus, we conclude that the First Amendment does not prevent the Board from removing Plaintiff under these circumstances.

## 2. Void for Vagueness

Under the undisputed facts of this case Policy No. 321 is not void for vagueness as applied to Plaintiff. In making this determination we look to the challenged section of Policy No. 321, "Political Activities," which states "no employe [sic] shall engage in political activities upon property under the jurisdiction of the Board." [6]

■ As the Third Circuit has noted, although the "void-for-vagueness" doctrine was originally used in the criminal law arena, it has been "transplanted into a First Amendment setting." *Kreimer v. Bureau of Police for Town of Morristown,* 958 F.2d 1242, 1266 (3d Cir.1992). That court noted that "a meritorious First Amendment vagueness challenge will annul an unclear law that 'chills' protected First Amendment activities. Hence, a vagueness challenge will succeed when a party does not have actual notice of what activity the statute prohibits." *Id.* The Supreme Court stated that a law is void for vagueness when it is so obscure in its promulgation that a reasonable person could not determine from a reading what the law purports to prohibit. *United States v. National Dairy Products Corp.,* 372 U.S. 29, 33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963). Certainly, the challenge can be made in a civil context, and against policies and regulations as well as statutes. *See San Filippo v. Bongiovanni,* 961 F.2d 1125, 1135 (3d Cir.), *cert. denied,* 506 U.S. 908, 113 S.Ct. 305, 121 L.Ed.2d 228 (1992). However, a lesser degree of specificity is required in the civil context because the penalties are less severe. *Id.*

■ In the context of public employment, the vagueness doctrine is grounded in no-

tions of fairness, and the concept that individuals must be given fair notice that certain conduct puts them at risk for sanctions. *San Filippo,* 961 F.2d at 1136. Nevertheless, the Supreme Court has held that the "standards are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge." *Id.* (*citing Arnett v. Kennedy,* 416 U.S. 134, 159, 94 S.Ct. 1633, 1646–47, 40 L.Ed.2d 15 (1974)). Of course, each situation is taken in a case by case manner, and the "void for vagueness" inquiry is always examined to see if it is vague as applied to the affected party. *San Filippo,* 961 F.2d at 1136 (*citing United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975)).

■ With this in mind, we examine the phrase "political activities." Taking its basic definition, we see that "political" means "pertaining or relating to the policy or the administration of government ... of or pertaining to the exercise of rights and privileges or the influence by which individuals ... seek to determine or control public policy; having to do with organization or action of individuals, parties, or interests that seek to control appointment." *Black's Law Dictionary* 1158 (6th ed.1990); *see also Webster's Collegiate Dictionary* 769 (5th ed.1941). It is clear that politics does not only refer to national or state elections between the candidates of the two major political parties, but also to local, union, and school discussions of power. The Supreme Court artfully described the political arena as "where partisanship is the hallmark of decisionmaking." *Allied Tube & Conduit Corp. v. Indian Head,* 486 U.S. 492, 506, 108 S.Ct. 1931, 1940, 100 L.Ed.2d 497 (1988). As such, the plain meaning of "political activities" includes any action which involves the advocacy of partisan decisionmaking. *See United States Civil Service Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 556, 93 S.Ct. 2880, 2886, 37 L.Ed.2d 796 (1973) (holding that the prohibition against federal employees being involved in political activities is not void for vagueness, and listing types of political activities

---

6. Apparently, this policy section was revised in October of 1996; however, our concern is only

with the section as it was at the time of the alleged violation.

appropriately prohibited; prohibition did not chill ability to personally participate in politics via the ballot box).

This plain meaning is not contravened by the policy itself. Policy No. 321 has as its purpose, "The Board recognizes and encourages the right of its employees, as citizens, to engage in political activity. However, school property and school time, paid for by all the people, may not be used for political purposes." As such, the restriction on political activities is merely a "manner or means" facially neutral restriction which does not impinge on Plaintiff's First Amendment rights. It is plain that the policy would prohibit using school property and time for a meeting with partisan content. It is equally plain that the policy would prohibit a superintendent from spending her time presiding over such a meeting without also spending time neutralizing partisan comments. While the policy could certainly have been written in a clearer manner, along the lines of the Hatch Act discussed in *Letter Carriers, supra*, it does not violate the First Amendment via the void for vagueness doctrine. Thus, Plaintiff's First Amendment claims fail and summary judgment should be granted for Defendants as to Count III.

### B. Count II Substantive Due Process Claims

Defendants argue that Plaintiff's substantive due process claims in Count II are invalid under *McKinney v. Pate*, 20 F.3d 1550 (11th Cir.1994)(en banc), *cert. denied*, 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995), because Plaintiff's complaint only asserts the deprivation of state created property interests. The Due Process Clause of the Fourteenth Amendment declares that no state shall deprive any person of life, liberty, or property, without due process of law. The clause has a substantive component that bars " 'certain government actions regardless of the fairness of the procedures used to implement them.' " *Planned Parenthood v. Casey*, 505 U.S. 833, 846, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674 (1992) (quoting *Daniels*, 474

U.S. at 331, 106 S.Ct. at 665). "[U]nder the law of this circuit, 'not all property interests worthy of procedural due process protections are protected by the concept of substantive due process.' " *Homar v. Gilbert*, 89 F.3d 1009, 1021 (3d Cir.1996) (3–2 decision), *cert. granted*, —— U.S. ——, 117 S.Ct. 678, 136 L.Ed.2d 604 (1997) (No. 96–651) (quoting *Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir.1989)). Instead, plaintiff must have been deprived of " 'a certain quality of property interest.' " *Homar*, 89 F.3d at 1021 (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 600 (3d Cir.1995)).

This circuit has not decided whether a state-created property interest in employment is worthy of protection under the substantive due process clause. *Homar*, 89 F.3d at 1021. Instead, the Third Circuit recently remanded this issue to a court in the Middle District of Pennsylvania. *Id.* We will not decide this issue either, as we believe Plaintiff has conceded this point by citing *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir.1990) for the proposition that "substantive due process protects fundamental interests, not state-created contract rights," *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir.1992) for the proposition that "Absent the infringement of a fundamental right, the termination of public employment does not constitute a denial of substantive due process," and *McKinney v. Pate*, 20 F.3d at 1560.[7] (Pl.'s Br. at 38, 41).

Plaintiff nevertheless argues that this claim should not be dismissed because her fundamental right of free speech was the basis for her termination. Here we are concerned with the deprivation of a liberty interest: " '[A]ll fundamental rights comprised within the term liberty are protected by the Federal Constitution from invasion by the States.' " *Planned Parenthood*, 505 U.S. at 847, 112 S.Ct. at 2804 (quoting *Whitney v. California*, 274 U.S. 357, 373, 47 S.Ct. 641, 647, 71 L.Ed. 1095 (1927) (concurring opinion)). Most of the substantive liberties of

---

**7.** In citing this authority, Plaintiff also concedes that she is not basing a substantive due process claim upon the deprivation of a liberty interest based in tort law, such as damage to her reputation or stigma in attempting to find another position. In fact, Plaintiff does not even discuss this possibility in her brief.

the Bill of Rights have been incorporated into the Due Process Clause of the Fourteenth Amendment against the States. *Planned Parenthood,* 505 U.S. at 847, 112 S.Ct. at 2804–05. The substantive sphere of liberty extends beyond the Bill or Rights and the specific practices of States at the time of the adoption of the Fourteenth Amendment. *Planned Parenthood,* 505 U.S. at 848, 112 S.Ct. at 2805 (right to privacy). The substantive liberties in the First Amendment have been incorporated against the states by the Due Process Clause of the Fourteenth Amendment. *Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). Thus, Plaintiff's First Amendment claims in Count III of her complaint, because they are alleged against State actors, become substantive due process claims. As our prior discussion of those Count III claims indicates, under the undisputed facts of this case Plaintiff's First Amendment rights were not violated. Thus, Plaintiff has not been deprived of a liberty interest protected by substantive due process on this ground.

Plaintiff also appears to argue that selective enforcement of Policy No. 321 violated her equal protection rights pursuant to the Fourteenth Amendment, thereby violating her substantive due process rights. This argument is also without merit.

Plaintiff's brief in its section on substantive due process cites *Esmail v. Macrane,* 53 F.3d 176 (7th Cir.1995) for the proposition that selective enforcement of Policy No. 321 "is a violation of Dr. Coover's rights to equal protection under the law pursuant to the Fourteenth Amendment." (Pl.'s Br. at 40). However, *Esmail* makes clear that its decision was based on the Equal Protection Clause of the Fourteenth Amendment, not substantive due process under that same amendment. *Esmail,* 53 F.3d at 180. As Defendants note, Plaintiff has not pleaded an equal protection claim. (Defs.' Reply Br. at 11). Thus, Defendants will be granted summary judgment with regard to Plaintiff's Count II substantive due process claims and no equal protection claim [8] has been alleged.

### C. Count I Procedural Due Process

Defendants have moved for summary judgment on Count I, which contains Plaintiff's procedural due process claims.

A plaintiff may bring suit under § 1983 under the Due Process Clause for a guarantee of fair procedure. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). For this type of claim, it is necessary to ask what process the state provided, and whether it was constitutionally adequate. *Zinermon,* 494 U.S. at 126, 110 S.Ct. at 983–84. The violation actionable is not complete unless and until the state fails to provide due process. *Id.* Due Process is a flexible concept that varies with the particular situation. *Zinermon,* 494 U.S. at 127, 110 S.Ct. at 984. To determine what procedural protections the Constitution requires in a particular case, we weigh several factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

---

**8.** Plaintiff cites our March 7, 1996 memorandum which noted that "[t]here are no facts alleged at this time that support a selective enforcement of the policy," presumably to somehow indicate that we allowed discovery on the equal protection issue. This was not the case. Such facts were relevant to whether Policy No. 321 was used to regulate the content of Coover's speech in violation of her first amendment rights. Since we assumed that Policy No. 321 was used to regulate content in our discussion of whether her speech was protected, any factual dispute in this area is not material.

Nevertheless, we fail to see how Plaintiff Coover could prevail even if Plaintiff Coover had alleged an equal protection claim. As noted in *Esmail,* plaintiff must be able to prove that the action taken by the state, "whether in the form of prosecution or otherwise, was a spiteful effort to 'get' [her] for reasons wholly unrelated to any legitimate state objective." *Esmail,* 53 F.3d at 180. Leaving aside the fact that *Esmail* was not decided in this circuit, we doubt that Coover can prove such a violation under the undisputed facts of this case. The School District's interest in the efficient running of the school would appear to impact teachers and an institution's top administrator differently.

administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)). The Court has usually held that the Constitution requires some sort of hearing before the state deprives a person of liberty or property. *Zinermon,* 494 U.S. at 127, 110 S.Ct. at 984. A public employee has a property interest in not being suspended without pay with intent to dismiss. *Gniotek v. City of Philadelphia,* 808 F.2d 241 (3d Cir.1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987). *See also Homar,* 89 F.3d at 1016.

In determining what process is due, we note that an essential principle of due process is that a deprivation of a protected liberty or property interest "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). " 'The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.' " *Id.* at 545, 105 S.Ct. at 1495 (quoting *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). Thus, after balancing the interests of public employees and employers, the *Loudermill* Court held that " '[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evi-

dence, and an opportunity to present his side of the story.' " *McDaniels v. Flick,* 59 F.3d 446, 454 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1017, 134 L.Ed.2d 97 (1996) (quoting *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495). In *Loudermill* these protections were "coupled with post-termination administrative procedures as provided by the Ohio Statutes." *Id.* (quoting *Loudermill,* 470 U.S. at 547–48, 105 S.Ct. at 1496–97).

■ Defendants argue that they are entitled to summary judgment on Plaintiff's procedural due process claim because it is undisputed that Plaintiff was afforded an appropriate predeprivation hearing given the availability of appropriate posttermination administrative procedures. The parties do not dispute that when Plaintiff was suspended without pay on June 22, 1995, she was deprived of a property interest protected by the procedural due process component of the Fourteenth Amendment.[9] There is also no dispute that the process she is due is dictated by *Loudermill.* (Pl.'s Br. at 43–44, citing *Loudermill,* 470 U.S. at 547–48, 105 S.Ct. at 1496–97; Defs.' Br. at 18). As discussed above, under *Loudermill,* prior to being suspended without pay a plaintiff is entitled to notice of the charges against him, an explanation of the employer's evidence, an opportunity to present his side of the story, and adequate postdeprivation procedures. The Third Circuit has held that the postdeprivation procedures available under Pennsylvania's Local Agency Law are adequate under circumstances similar to this case. *McDaniels,* 59 F.3d at 460–61.[10]

---

**9.** As we have noted Plaintiff concedes there was no protection under substantive due process.

**10.** Defendants also seem to be arguing that under *McDaniels* the only process that Plaintiffs are due are the post-deprivation procedures available under Local Agency Law. It is true that "[i]n some circumstances ... the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Zinermon,* 494 U.S. at 128, 110 S.Ct. at 984. This represents a special case in the general *Mathews v. Eldridge* analysis, in which the postdeprivation tort remedies are all the process that is due, simply because the value of predeprivation safeguards is negligible in preventing the type of deprivation at

issue. *Zinermon,* 494 U.S. at 128–29, 110 S.Ct. at 984–85. This special case was presented in *McDaniels,* but only because of the procedural posture of the case. In *McDaniels,* the Third Circuit first determined that the plaintiff had already been provided with the only predeprivation procedures to which he was entitled—the three *Loudermill* protections. *McDaniels,* 59 F.3d at 453–58. Thus, the presence of adequate postdeprivation remedies cured the absence of other pretermination protections, such as an impartial predeprivation decisionmaker. *Id.* at 460–61. Thus, Defendants would be incorrect to assert that *McDaniels* entitles Plaintiff only to post-deprivation remedies available under Pennsylvania's Local Agency Law.

Nevertheless, summary judgment should be denied because issues of material fact exist as to whether Coover received adequate notice of the charges and the evidence against her and as to whether she was afforded an adequate opportunity to respond.

■ Plaintiff contends that she is entitled to be informed of the substance of the supporting evidence, not merely to have that evidence explained. Her support for this contention is weak.[11] "We have held, however, that pretermination notice of the charges and evidence against an employee need not be in great detail as long as it allows the employee 'the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges.'" *McDaniels,* 59 F.3d at 457 (citing *Gniotek,* 808 F.2d at 244). "[N]o advance notice of the pretermination hearing is required; 'Notice is sufficient, (1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and (2) if it is timely under the particular circumstances of the case.'" *McDaniels,* 59 F.3d at 456 (quoting *Gniotek,* 808 F.2d at 244). Notice may be written or oral. *Homar,* 89 F.3d at 1014.

The Defendants note that Plaintiff was given a letter on June 19, 1995 that expressly stated and identified (1) the fact that discipline or discharge will be considered; (2) the legal authority for the possible discharge, (3) the School Board policy violated, (4) the date of the violation, (5) the allegation that Plaintiff scheduled Reverend Vega–Neel as a guest speaker and that he made untruthful statements concerning the majority of the School Board, (6) the allegation that she failed to disclose her own violation of Policy No. 321 in her June 16, 1995 memorandum, (7) that no final decision whether to impose discipline had been made, (8) that she can provide reasons why charges should not be filed against her, and (9) the fact that a penalty will be imposed if the allegations are true. The Defendants also present Solicitor Steele's testimony that he intended to use the meeting to give Plaintiff an explanation of the evidence against her and that he would have allowed Plaintiff to respond to the allegations against her and address any issues of bias. Defendants also present affidavits from the Board Members stating that they planned to consider what Plaintiff had to say before deciding what actions to take against her. They also present evidence that Plaintiff, on the advice of her attorney, declined to attend a meeting with Solicitor Steele, including Plaintiff's deposition testimony that she declined to attend the meeting because she felt that attending would be futile because Solicitor Steele was too biased to conduct the hearing.

Plaintiff points to the vague and conclusory statement in Solicitor Steele's letter that the School District planned to consider charges against her for neglect of duty and intemper-

---

**11.** To support her contention, Plaintiff cites, without explanation, *Brock v. Roadway Express, Inc.,* 481 U.S. 252, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987). Although this case did not involve the procedural due process rights of public school personnel, it did follow *Loudermill* in requiring some sort of predeprivation hearing coupled with post termination procedures. *Brock,* 481 U.S. at 263–64, 107 S.Ct. at 1748–49. However, this case is of limited use to us because it appears to have required more extensive predeprivation protections than are required for public school personnel under *McDaniels. See Brock,* 481 U.S. at 264, 107 S.Ct. at 1748–49. In addition, while the case does appear to have required actual notice of the substance of evidence as opposed to the opportunity to be given evidence, unlike the case at bar it did not involve a meeting that a plaintiff declined to attend.

In addition, Plaintiff concedes in her brief that due process does not require the pretermination hearing to be held before an unbiased and impar-

tial decisionmaker. Instead, she argues that Solicitor Steele was not a member of the board and not a decisionmaker. However, Plaintiff has pointed to no evidence that contradicts the School Board's close relationship with Solicitor Steele shown by his drafting of the June 19, 1995 letter to Plaintiff and his being permitted to remain at a meeting at which she was excluded. Given the evidence of this relationship, it is unclear what the additional protection of having the actual School Board preside at an informal hearing prior to her suspension without pay in contemplation of dismissal would have accomplished. On the other hand, given Solicitor Steele's relative expertise in the legal arena it is easy to see the obvious administrative efficiency that would be served by having him preside rather than the full School Board at that stage. Thus, under a *Mathews v. Eldridge* balance due process was not violated by having Solicitor Steele preside at that hearing.

ance and to the fact that when specific charges were adopted by the Board Majority on June 22, 1995 those charges had been expanded to include broad and indeterminate allegations that Plaintiff had engaged in conduct undermining the authority of the Board, was consistently insubordinate to the Board, and consistently violated Policy No. 321. Plaintiff notes that the letter failed to provide an explanation of the Board's evidence against her, not revealing any witnesses or evidence that related to any of the charges. She asserts that the Defendants have conceded that the letter itself was insufficient to explain the evidence. Plaintiff points to evidence that Defendant School District's expert in a suit against Solicitor Steele concludes that instead of confronting Plaintiff with evidence as suggested by Loudermill, Solicitor Steele sent her a surreptitious letter before the June 19, 1996 letter for the purpose of forcing her to lie to avoid implicating herself. Plaintiff also points to evidence that Solicitor Steele did not permit her to respond immediately after she was handed the letter at the conclusion of a School Board meeting she was forced to leave. She also alludes to the limited time she had to respond: she received the letter on the 19th, she was to indicate by the end of the business day on June 21 if she would meet with Solicitor Steele at 11 am on June 22, and Solicitor Steele would present formal charges to the School Board on June 22 if Coover did not resign or "articulate a convincing reason" why charges should not be filed. The letter also mentioned that she would be suspended without pay pending a July 17, 1995 hearing if the charges were filed. She points to the fact that the incident occurred more than six months earlier and that she was immediately suspended with pay and had no access to her files.

■ We believe that a reasonable jury could find that Plaintiff was not given notice of the charges and evidence against her or an adequate opportunity to respond. We are particularly impressed by the stark contrast in the time lapse between the Vega–Neel incident and the June 19th letter and the short amount of time in which Plaintiff was given to decide if she would respond. A reasonable jury could conclude that an opportunity to respond never existed given the short time period Plaintiff was given to decide on a course of action and to gather evidence, all without access to her files.[12] Likewise, a reasonable jury could find that the expansion of the charges against Plaintiff was substantial and under the circumstances deprived her of notice. Because these material issues of fact exist, Defendants' motion will be denied as to Count I, procedural due process.[13]

---

**12.** Defendants have presented us with no case law for the proposition that Coover's decision not to attend the meeting with Solicitor Steel constituted a waiver of her right to notice of the evidence against her and an opportunity to respond. Waiver is a voluntary and intentional relinquishment or abandonment of a known right. *Helco, Inc. v. First Nat'l City Bank,* 470 F.2d 883, 885 (3d Cir.1972); *Moscatiello Constr. Co. v. Pittsburgh Water and Sewer Auth.,* 167 Pa.Cmwlth. 508, 648 A.2d 1249, 1251 (1994). Waiver is an affirmative defense which a defendant bears the burden of proving. *Ingersoll Milling Mach. Co. v. M/V Bodena,* 829 F.2d 293, 300 (2d Cir.1987). The hearing required by due process is subject to waiver. *Boddie,* 401 U.S. at 378–79, 91 S.Ct. at 786–87.

It is not clear that waiver has been established as a matter of law, given the time pressure Plaintiff faced. *See Pratt v. Thornburgh,* No. 85–972, 1987 WL 10707 (E.D.Pa. May 13, 1987) (finding waiver but emphasizing the importance of a voluntary abandonment of position, evidenced by no attempt to contact an employer in the context of ample time to respond and repeated notice of specific actions the employee could take to prevent discharge). Even if we found Plaintiff waived her right to notice of the evidence against her and an opportunity to respond as a matter of law because of her response to the June 19th letter, we could not find that she waived her right to notice and an opportunity to respond to the additional charges the School Board cited when it suspended her without pay. *See Comer v. School Dist. of Philadelphia,* No. 84–3206, 1987 WL 13088 (E.D.Pa. June 29, 1987) (violation of due process found where plaintiff did not attend a meeting and where the grounds for suspension were broader than both the grounds that plaintiff had been told would be discussed at the meeting and the grounds which plaintiff had discussed with employers under other circumstances). Thus, waiver does not entitle Defendants to summary judgment on Count I, procedural due process.

**13.** Note that this case differs in certain important respects from *McDaniels.* The plaintiff in *McDaniels* was not suspended without pay almost immediately after the hearing, he actually did respond to the charges, and the school had to

### D. Qualified Immunity

Defendant Board Members argue that they should be granted summary judgment in their individual capacities because they are entitled to qualified immunity.[14] Because we have dismissed Counts II–IV, we address the issue of whether Defendant Board Members are entitled to qualified immunity on Count I, Plaintiff's procedural due process claim. We hold that they are.

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court established the standard for a grant of qualified immunity. The Court stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. In order to apply this test, the Court concluded that on summary judgment, the trial judge must determine "whether the law was clearly established at the time the action occurred." *Id.* If the law was clearly established, the Court held that "the immunity defense ordinarily should fail . . . ." *Id.* at 818–19, 102 S.Ct. at 2738.

The Court of Appeals for the Third Circuit has provided additional guidance on the standard for a grant of qualified immunity. The Third Circuit further defined when a law is clearly established by holding:

> [I]n order for the governing law to be sufficiently well established for immunity to be denied, it is not necessary that there have been a previous precedent directly in point. . . . The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful.

*Rappa v. New Castle County,* 18 F.3d 1043, 1077 (3d Cir.1994) (citing *Good v. Dauphin County Soc. Serv.,* 891 F.2d 1087, 1092 (3d Cir.1989)). Courts make this determination by examining the state of the law at the relevant time and the information available to the defendants in the case. *Good,* 891 F.2d at 1092.

■ At the relevant time, the law was unclear as to whether Plaintiff was entitled to a predeprivation hearing. In 1985 the Supreme Court in *Loudermill* established that before being deprived of the private interest in retaining employment, an employee must be given notice and an opportunity to respond coupled with adequate post deprivation procedures. *Loudermill,* 470 U.S. at 547–48, 105 S.Ct. at 1496–97. However, the issue of whether under *Loudermill* a governmental employer may *suspend* an employee without pay unless that suspension is preceded by some kind of pre-suspension hearing was not "clearly enunciate[d]" by the Third Circuit until 1996 in *Homar.* *Homar,* 89 F.3d at 1014–16 (3–2 decision). The Third Circuit in *Homar* noted that the Federal Circuit had refused to read *Loudermill* as holding that " 'the government *must* suspend . . . with pay.' " *Id.* at 1015 (quoting *Engdahl v. Dept. of Navy,* 900 F.2d 1572, 1758 (Fed.Cir.1990)). In addition, the Seventh and Tenth Circuits had not treated a governmental employee's right to a pre-suspension hearing before suspension without pay as being an established principle. *Id.* at 1015–16 (citing *Jones v. City of Gary, Ind.,* 57 F.3d 1435, 1436 (7th Cir.1995); *Ambus v. Granite Bd. of Educ.,* 975 F.2d 1555, 1558, 1562 (10th Cir.1992), *modified on hearing by,* 995 F.2d 992 (10th Cir.1993) (en banc)). The Third Circuit majority in *Homar* noted that it had not "precisely addressed" the issue in the past but had implied that the only constitutional suspension was one with pay in 1990 in *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064 (3d Cir.1990). *Id.* at 1016. However, one judge believed that the *Bradley* panel had expressly reserved decision on the issue. *Homar,* 89 F.3d at 1009 (Alito, J., concurring

---

act quickly because of its strong interest in protecting students from the sexual harassment of which the plaintiff was accused. *McDaniels,* 59 F.3d at 456–58.

**14.** The defense of qualified immunity is a defense available to each individual defendant in his individual capacity. *Bakalis v. Golembeski,* 35 F.3d 318, 326–27 (7th Cir.1994).

in part and dissenting in part). In any case, the Third Circuit had made the inconsistent suggestion that a post-suspension hearing, had one been provided, might have been adequate under *Loudermill* or *FDIC v. Mallen*, 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988). *Homar*, 89 F.3d at 1016 n. 3, 1025 (citing *Bradley*, 913 F.2d at 1078). Thus, we do not believe that the principle that Plaintiff was entitled to a *Loudermill* presuspension hearing was clearly established in June 1995.

In addition, the precise nature of the process due Plaintiff was not clear in June 1995. The pretermination requirements set forth in *Loudermill* itself are neither extensive nor specific. *Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495 ("the pretermination 'hearing'... need not be elaborate ... In general, 'something less' than a full evidentiary hearing is sufficient ... the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.").

Given this standard, the Third Circuit has approached *Loudermill* suits on a case-by-case basis. In order for Defendant Board Members to forfeit their qualified immunity they would have to have objectively violated a case with a similar fact pattern decided before they took their actions. Plaintiff has cited no case decided before June 19, 1995 that indicates that Defendant Board Members reasonably should have known that they were not affording Plaintiff clearly established constitutionally adequate notice and an opportunity to respond. Defendant Board Members were relying on the advice of Solicitor Steele, who drafted the July 19th letter and presented it to Coover. *See Kincade v. City of Blue Springs, Missouri*, 64 F.3d 389, 399 (8th Cir.1995), *cert. denied*, —— U.S.

——, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996) ("Reliance on the advice of counsel is a factor to be weighed in assessing whether a public official is entitled to qualified immunity."). The undisputed evidence establishes that the Board Members tried to afford Plaintiff some notice and an opportunity to respond. In fact, there is no dispute that Plaintiff was provided with proper notice and an opportunity to respond before she was terminated permanently from her position through the hearing conducted on July 17, July 31, August 1, August 9, August 24, and September 19, 1995. In addition, the letter of January 19th did give Plaintiff some notice, apprised her of her rights associated with her dismissal hearing to occur one month later, and provided for a meeting with Solicitor Steele. We believe that reasonable Board Members acting in June 1995 could have believed that their actions were lawful. Accordingly, Defendant Board Members are entitled to qualified immunity in their individual capacities.

### E. *Res Judicata* and Collateral Estoppel

We come now to Defendants' contention that Plaintiff's claims against Defendants School District and Board Members in their official capacities are precluded under the theories of *res judicata* or collateral estoppel.[15] Because *res judicata* and collateral estoppel are affirmative defenses,[16] Defendants bear the burden of showing that they apply. *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir.1984); *Faison v. Sex Crimes Unit of Philadelphia*, 845 F.Supp. 1079, 1085–86 (E.D.Pa.1994); Fed. R.Civ.P. 8(c).

Defendants argue that they are entitled to summary judgment based on the doctrines of *res judicata* and collateral estoppel in light of *Edmundson v. Borough of Kennett Square*, 4

---

**15.** Defendant Board Members concede that if we had not granted summary judgment to them in their individual capacities because of qualified immunity, they could not be granted summary judgment on the basis of *res judicata* because they were not a party to the state action and *res judicata* requires identity of parties. While they do argue that Defendant Board Members are entitled to summary judgment on the basis of collateral estoppel in their individual capacities, our decision that they are entitled to qualified

immunity makes it unnecessary for us to consider this issue. Therefore, all references in this section are to Defendant Board Members in their official capacities unless otherwise indicated.

**16.** On February 14, 1997 the court approved an oral stipulation on the record of all counsel that the pleadings of the defense would be deemed amended to assert the affirmative defenses of *res judicata* and collateral estoppel.

F.3d 186 (3d Cir.1993); *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984); and *England v. Louisiana State Board of Med. Exam'rs.,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Plaintiff argues that her claims are not precluded because, unlike the claimants in *Migra* and *Edmundson* and in line with *England,* she preserved her federal civil rights claim for adjudication in federal court. *Bradley,* 913 F.2d at 1064.

The concepts of *res judicata* and collateral estoppel are distinct. *Res judicata,* also known as claim preclusion, gives dispositive effect to a prior judgment if the particular issue although never litigated could have been raised in the prior action. *Bradley,* 913 at 1070. Collateral estoppel, also known as issue preclusion, bars relitigation only of an issue identical to an issue adjudicated in the prior action. *Id.* We must give the state judgment the same preclusive effect as would the state. *Id.* (citing *Migra,* 465 U.S. at 81, 104 S.Ct. at 896, 28, U.S.C. § 1738). In § 1983 cases, we must apply the same preclusion rules as would the courts of that state. *Edmundson,* 4 F.3d at 189 (citing *Migra,* 465 U.S. at 85–87, 104 S.Ct. at 898–99).

### 1. *Res Judicata*

### a. Claim Splitting

The Defendants argue that all of Plaintiff's claims against the School District and Board Members are *res judicata* because Plaintiff cannot satisfy four factors that are "necessary for a proper reservation of the plaintiff's rights to separately litigate his federal claim." (Defs.' Reply Br. at 13; *see also* Defs.' Reply Br. at 14 ("the *Bradley* decision ... established [that plaintiff must seek an abstention] as a prerequisite to a proper reservation of rights.")). We believe this is a misreading of *Bradley.*

The Third Circuit in *Bradley* relied on *two separate grounds* when it held that claim preclusion did not apply. The Third Circuit first considered whether plaintiff had made a valid reservation under *England* "[w]ithout deciding the general parameters of an *England* reservation." *Bradley,* 913 F.2d at 1072. The court concluded that the reserva-

tion of plaintiff's claims for federal adjudication must be recognized in the procedural situation facing that court, that is, where:

> (1) the plaintiff initiates an action in federal court, (2) the plaintiff appeals the termination of his employment through state prescribed procedures while explicitly reserving his federal claim, (3) both the defendant and the state tribunal acquiesce in the reservation, and (4) the federal action is stayed pending the outcome of the state proceeding ...

*Id.* at 1072.

In holding that *res judicata* did not apply, the Third Circuit in *Bradley also* relied on the exception in section 26(1) of the Restatement (Second) of Judgments which, in accord with the law of Pennsylvania, permits claim splitting. *Bradley,* 913 F.2d at 1072 (citing *Coleman v. Coleman,* 361 Pa.Super. 446, 522 A.2d 1115 (1987)(en banc) (" '[t]he law of Pennsylvania is in accord with the approach taken by [section 26(1)(a) and (b) of] the Restatement.' ")). Section 26(1) provides for an exception to the general rule of claim preclusion where:

> "(a) the parties have agreed in terms or in effect that the plaintiff may split his claim or that the defendant has acquiesced therein; or

> (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action."

*Bradley,* 913 F.2d at 1072 (quoting Restatement (Second) of Judgments § 26(1) (1982)).

In the face of *Bradley,* this court now confronts two issues: (1) whether *England* would preclude the claims made in this case and (2) whether the Restatement (Second) of Judgments and Pennsylvania law would preclude Plaintiff's claims.

As noted in *Bradley,* the Supreme Court has never explicitly limited *England* to the *Pullman* abstention context, so courts must look to the rationale underlying England: (1) the right of a litigant to choose a federal forum and (2) the duty of the federal court to take jurisdiction over federal claims that have been properly brought before it. *Bradley,* 913 F.2d at 1071–72.

Here, Plaintiff filed her claims in federal and state court simultaneously. While the case was not remitted to state court, Plaintiff, like the plaintiff in *Bradley,* was using the procedures of the Local Agency Law. *See* 2 Pa.C.S.A. § 551 et seq. If she was going to appeal,[17] she had to do so under 2 Pa.C.S.A. § 751 et seq. Although arguably Coover might have been forced to make an election to bypass the state forum and contest the termination solely in federal court, the Defendants did not object in either state or federal court to her express reservation of her federal rights until after the state court decided this case. Plaintiff's state court pleadings contained a reservation [18] of rights to pursue her claims in federal court. Unfortunately, it does not appear that the state court acquiesced in this reservation. We note in particular that the state court judge wrote two opinions which cited numerous cases which relied upon the federal constitution and included a discussion and express finding on federal constitutional issues. He said in his first opinion of July 10, 1996 "Employment in public education is a protected interest which cannot be terminated without adequate and proper notice in a hearing consistent with due process. *Perry v. Sinderman [Sindermann],* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)." (Pl.'s Ex. 6 at 4). In his second opinion of September 4, 1996 he reached a conclusion of law that "Proper notice and an opportunity to defend was provided to Dr. Coover." (Defs.' Ex. F–6). There is no express acquiescence in Plaintiff's reservation of federal rights in

the state court opinion, and under the circumstances we would be hard pressed to find an implied acquiescence. This court did not abstain from or stay these proceedings at any time and we were never asked to do so by the Plaintiff. To the contrary, the Defendant Board Members asked us in the alternative to stay this matter in a motion to dismiss filed on February 8, 1996.[19] For reasons we do not understand, the Plaintiff responded to the motion on February 28, 1996, stating that "Federal jurisdiction should not be postponed and stayed." (Pl.'s Br. filed Feb. 28, 1996 at 18). The elements outlined in *Bradley* are not present and we have some difficulty in finding that an *England* reservation is made out.

We have similar difficulty in finding that the state court had expressly reserved the plaintiff's right to maintain our federal court action. Nevertheless, there remains the issue of whether Defendants have acquiesced in Plaintiff's splitting her claims under Restatement (Second) of Judgments § 26(1)(a).

The comment to Restatement section 26(1)(a) explains that "[a] main purpose of the general rule [against claim splitting] is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable where the defendant consents, in express words or otherwise, to the splitting of the claim." *Bradley,* 913 F.2d at 1072 (citing Restatement (Second) of Judgments § 26(1)(a) comment a (1982)). The comment also notes that

---

**17.** 2 Pa.C.S.A. § 754(b) provides that, "the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant ..." Under 42 Pa.C.S.A. § 706 the court may, "direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances." These procedures have been found adequate to protect property rights. *McDaniels,* 59 F.3d at 461.

**18.** In paragraph 25 of Plaintiff's Petition for Review Plaintiff noted, "all statements regarding violations of Petitioner's constitutional rights in this Petition are in reference to violations of the Constitution of the Commonwealth of Pennsylvania." In paragraph 38 Plaintiff stated, "Petitioner hereby reserves her right to litigate violation of her federal constitutional and civil rights in a federal forum pursuant to federal law." The

Plaintiff then alleged numerous facts which she maintained demonstrated a violation of her constitutional rights. (Defs.' Ex. F–5 at 28, 46).

The Pennsylvania Constitution does not contain an express due process clause. Nevertheless, although its application has not been as widespread, the broad language in Article I, Section I of the Pennsylvania Constitution has been held to be substantially the same as the property protections afforded by the Fourteenth Amendment to the federal Constitution. *Willcox v. Penn Mut. Life Ins. Co.,* 357 Pa. 581, 55 A.2d 521, 526 (1947).

**19.** However, this motion was submitted by attorney Stuart L. Knade who informed this court via a telephone conference on the record on February 14, 1997 that he only represents Defendant Board Members in their individual capacities.

"[t]he failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim." *Id.* Moreover, section 86 of the Restatement (Second) of Judgments "makes clear that the exceptions described in section 26 apply to the effect of a state court judgment in a subsequent federal action." *Bradley,* 913 F.2d at 1072.

Here Defendants had notice because Plaintiff explicitly reserved her federal rights in her state court complaint and limited her constitutional claims to the Pennsylvania Constitution. In response to Plaintiff's simultaneous complaints in state and federal court, Defendants have not objected. The School District did not file an answer in state court and as the state court noted in its opinion, "the Board filed a six page brief which did not oppose any relief requested by Coover with the exception of Coover's request for costs, expenses, and counsel fees." (Defs.' Ex. F–6 at 4–5). Plaintiff supplemented the certified record in state court with information she obtained through the discovery process in this court without objection by the School District. (Defs.' Ex. F–6 at 5).

Defendant School District filed an answer on April 30, 1996 and did not plead *res judicata* or collateral estoppel as affirmative defenses. We have already noted that Defendant Board Members asked this court to stay these proceedings in their motion to dismiss. Defendants made no objections until after judgment had been entered in state court. From this record, it appears that Defendants have acquiesced in Plaintiff's claim splitting.

Before ruling for Plaintiff on this matter on the basis of Defendants' acquiescence, we feel constrained to look more closely at the law of Pennsylvania on *res judicata* than the Third Circuit did in *Bradley.* Unlike the Third Circuit in *Bradley,* we have had diffi-

culty in making out an *England* reservation. Similarly, unlike the Third Circuit in *Bradley,* we cannot rely on the state court's express reservation of the Plaintiff's right to maintain the federal action. *See Bradley,* 913 F.2d at 1073.

Whether a claim is precluded in Pennsylvania depends upon the intent of the parties *and* court:

> [W]hether a plaintiff may be permitted to bring a second suit on the undecided claims in the first action, and thereby split a cause of action, turns on the question of the parties' and the court's intent; i.e., where the parties and the court did not fully address the claims in the first suit did they intend the judgment not to be a final adjudication of all the issues? The conduct of the parties and the court, and the language of the decree, may be considered in ascertaining such intent.

*Coleman,* 522 A.2d at 1121 (citing *Keystone Bldg. Corp. v. Lincoln Sav. & Loan Ass'n,* 468 Pa. 85, 360 A.2d 191, 195 (1976)).[20]

Here, both cases were filed simultaneously without objection to the splitting of Plaintiff's federal and state claims. Defendants did not object to the splitting of the claim until after the state court decision was handed down. While these actions appear to amount to an acquiescence by Defendants under the Restatement (Second) of Judgment, they do not show a strong intent to permit claim splitting by Defendants.

As discussed above, the state court did not consent to the claim splitting. The state court considered federal constitutional law and expressly found as a matter of law that Plaintiff received proper notice and an opportunity to respond. Thus, the state court did not intend to permit Plaintiff to reserve her federal rights and "fully addressed" the only issue that remains in this case, Plaintiff's Count I, procedural due process.

---

**20.** The court in *Coleman* used this formulation of Pennsylvania's law on claim splitting in the same discussion in which it stated that "The law of Pennsylvania is in accord with the approach taken by the Restatement." *Coleman,* 522 A.2d at 1120–1121. The latter language was quoted in *Bradley. Bradley,* 913 F.2d at 1072. As in *Bradley,* the court in *Coleman* faced a record which established that the first court had consented to the claim splitting. *Coleman,* 522 A.2d at 1121. Thus, in stating that the law of Pennsylvania is in accord with the Restatement (Second) of Judgments we believe the court in *Coleman* was referring specifically to the application of the Restatement to the merits of the case before it.

■ We believe that under the circumstances of this case, policy considerations weigh in favor of finding Plaintiff's claims *res judicata*. In addition to being aimed at preventing a multiplicity of suits, *res judicata* also "'serves the public interest by keeping the courts clear of disputes that have been decisively resolved.'" *Coleman*, 522 A.2d at 1119 (citing *Consolidation Coal Co. v. District 5, United Mine Workers*, 336 Pa.Super. 354, 485 A.2d 1118, 1122 (1984)). Here Defendants did not explicitly consent to Plaintiff's claim splitting. Furthermore, the state court opposed it, considering and decisively resolving the only issue that remains in this case. Under these circumstances we are not inclined to disturb that resolution.

### b. Finality of Judgment

Finally, we turn to Plaintiff's contention under *Bailey v. Ness*, 733 F.2d 279 (3d Cir. 1984) that no preclusive effect should be given to Judge Panella's September 4, 1996 decision until the state appeals process has been completed. We do not find this argument persuasive.

■ Under Pennsylvania law, the doctrine of res judicata holds that "'a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action.'" *Keystone Bldg. Corp.*, 360 A.2d at 194 (citations omitted). In raising *Bailey*, Plaintiffs only dispute that the Judge Panella's decision was final. The Third Circuit in *Bailey* stayed a federal § 1983 action rather than dismissing it under the doctrine of collateral estoppel because plaintiff's appeal of her state court criminal conviction was still pending. *Bailey*, 733 F.2d at 281–83. The court in *Bailey* cited two conflicting lines of Pennsylvania cases on whether a judgment by a trial court is final if

it is appealed. The older line holds that a state court judgment is not final if an appeal is pending. *Bailey*, 733 F.2d at 281.[21] The second and more recent line holds that a judgment is final "'unless or until it is reversed.'" *Id.* (quoting *Philadelphia Elec. Co. v. Pennsylvania Pub. Util. Comm'n*, 61 Pa.Cmwlth. 325, 433 A.2d 620, 626 (1981)).[22] However, since *Bailey*, the Commonwealth Court of Pennsylvania has "twice unequivocally decided that a state trial court judgment is final unless or until it is reversed." *Linnen v. Armainis*, 991 F.2d 1102, 1107 (3d Cir.1993) (citing *O'Hara Sanitation Co. v. Commonwealth Dep't of Envtl. Resources*, 125 Pa.Cmwlth. 441, 557 A.2d 453, 455 (1989); *Bassett v. Civil Serv. Comm'n of Philadelphia*, 100 Pa.Cmwlth. 356, 514 A.2d 984, 986 (1986)). These decisions are consistent with the Restatement (Second) of Judgments §§ 13, 16 (1982). *Linnen*, 991 F.2d at 1107.

Moreover, "a close reading of [*Bailey* ] reveals that the linchpin of the decision to stay the proceedings was the Court of Appeal's fear that the statute of limitations might extinguish a civil rights claim of the plaintiff." *Kellner v. Aetna Cas. & Surety Co.*, 605 F.Supp. 326, 330 (M.D.Pa.1984) (concluding that "the judgment on the merits of any Pennsylvania Court of Common Pleas is final for purposes of *res judicata* until reversed").

We do not believe that the statute of limitations is a concern here. An Appellate court's reversal of Judge Panella's findings in this case would not alter the viability of Plaintiff's claims. We concluded that Plaintiff's claims are *res judicata* because the state court *considered* federal issues, not because of the merits of any particular finding. Accordingly, Defendants' motion for summary judgment as to Count I, procedural due process is granted because this claim is *res judicata*.

**21.** The Third Circuit cited *Bryar v. Campbell*, 177 U.S. 649, 20 S.Ct. 794, 44 L.Ed. 926 (1900) (interpreting Pennsylvania law); *United States v. Employers Mut. Ins. Co. of Wisconsin*, 495 F.Supp. 840, 842 (W.D.Pa.1980); *In re Levitt*, 18 B.R. 595, 598 n. 11 (Bankr.E.D.Pa.1982); *Columbia Nat'l Bank v. Dunn*, 207 Pa. 548, 56 A. 1087 (1904); *Small's Appeal*, 15 A. 807 (Pa. 1888); *Souter v. Baymore*, 7 Pa. 415 (1848). *Bailey*, 733 F.2d at 281.

**22.** *See Bailey*, 733 F.2d at 281–82 (citing *Rheem v. The Naugatuck Wheel Co.*, 33 Pa. 356 (1859); *Woodward v. Carson*, 86 Pa. 176 (1878); *Elkin's Petition*, 289 Pa. 327, 137 A. 459 (1927); *Wallace's Estate*, 316 Pa. 148, 174 A. 397 (1934); *Helmig v. Rockwell Mfg. Co.*, 389 Pa. 21, 131 A.2d 622, *cert. denied*, 355 U.S. 832, 78 S.Ct. 46, 2 L.Ed.2d 44, *reh. denied*, 355 U.S. 885, 78 S.Ct. 146, 2 L.Ed.2d 115 (1957)).

### 2. Collateral Estoppel

Because we have concluded that all of Plaintiff's claims should be dismissed, we do not reach the issue of whether Plaintiff's claims against Defendants School District and Board Members in their individual and official capacities should be dismissed under the doctrine of collateral estoppel.

### *ORDER*

AND NOW, this 26th day of February, 1997 in consideration of Defendants' September 17, 1996 motion for summary judgment, Plaintiff's response filed November 4, 1996, and Defendants' reply thereto filed December 4, 1996, it is hereby ORDERED:

1. Defendants' motion is GRANTED on Count I (procedural due process), Count II (substantive due process), Count III (First Amendment), and Count IV (conspiracy);

2. JUDGMENT is entered in favor of Defendants and against Plaintiff on Counts I–IV; and

3. This case is closed.